Gina JOHNSON, Appellant,

v.

Robert C. JOHNSON, Appellee.

No. 46A04–0810–CV–570.

Court of Appeals of Indiana.

March 4, 2009.

Rehearing Denied April 27, 2009.

831

Amber L. Lapaich, Steven C. Snyder & Associates, Michigan City, IN, Attorney for Appellant.

Douglas L. Biege, Sallwasser & McCain, LLP, LaPorte, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Gina Johnson ("Wife") appeals the trial court's order granting Robert Johnson's ("Husband") motion to have Wife's judgment lien subordinated.

We affirm.

### ISSUE

Whether the trial court erred in ordering Wife to subordinate her judgment lien.

### FACTS

Wife filed a petition for dissolution of marriage on April 17, 2006. On February 22, 2007, the trial court ordered mediation. On May 7, 2007, the parties waived a final hearing pursuant to Indiana Code section 31–15–2–13. Also on May 7, 2007, the parties filed a property settlement agreement (the "Settlement Agreement"), which was prepared by Husband's attorney. Both parties, however, were represented by counsel.

The Settlement Agreement provided, in pertinent part, as follows:

(2) *REAL ESTATE*

(a) The parties agree that the jointly owned real estate located 3645 East 200 North, Rolling Prairie, Indiana, containing a home, barn and two hundred (200) acres, more or less, including past or future rents, shall be set over to [Husband] to have and hold as his own separate property.

(b) The parties agree that the jointly owned real estate located in Pleasant Township, containing thirty-five (35) acres, more or less, shall be set over to [Husband] to have and hold as his own separate property.

(c) [Husband] shall be responsible for mortgage payments, insurance and property taxes and shall hold [Wife] harmless thereon. [Wife] shall execute Quitclaim Deeds simultaneously with this agreement, which shall be subject to

the obligations set forth in this agreement.

(3) *PERSONAL PROPERTY*

. . . .

(d) [Husband] shall retain all right, title, and interest in all stock in Sunset Dairy, Inc. [Wife] specifically disclaims any interest to such stock as part of the consideration set forth in this Property Settlement Agreement.

. . . .

(5) *PAYMENTS TO WIFE.* As full consideration of the release and disclaimer of the assets referenced in this agreement which [Husband] will receive, [Husband] agrees to make the following payments to [Wife]:

(a) [Husband] will pay [Wife] Twenty Thousand Dollars ($20,000), at the time of the execution of this agreement. [Husband] will further pay [Wife] Eighty Thousand Dollars ($80,000) on or before June 1, 2007. [Husband] will further pay the sum of Five Thousand Dollars ($5,000) to [Wife] on July 1, 2007, and on every first day of the month thereafter through and including December 1, 2007. In addition, [Husband] will pay to [Wife] the lump sum of One Hundred and Seventy Thousand Dollars ($170,000) on or before December 31, 2007. The payments outlined herein above shall be without interest. . . .

(b) On February 1, 2008, and each month thereafter, [Husband] shall commence monthly payments totaling [the] sum of Six Hundred Thousand Dollars ($600,000) with payments amortized over a five year period at an interest rate of six percent (6%).

(App.67–69).

On April 3, 2008, Husband filed a motion for declaratory relief; appointment of a commissioner; and stay of the post-divorce settlement payments. He asserted as follows:

3. [Husband] has made all payments to date to [Wife] in a timely manner.

4. As part of the ongoing farming operation, Sunset Dairy, Inc., for which [Wife] has been receiving funds, the farm has maintained certain financing and lines of credit as part of its normal business operations.

5. All financing and lines of credit were in place prior to the filing of this dissolution action.

6. All financing and lines of credit were in place at the time of the entry of the Property Settlement Agreement.

7. [Wife] had full knowledge of the financing in place that was necessary to run the family farm during negotiation and at the time of entry of the Property Settlement Agreement.

8. [Wife] had full knowledge that it would be likely that the family farm would need to obtain additional financing in order to make payments to her at the time of the settlement.

9. The family farm is now restructuring it's [sic] debt in an effort to sustain payments to [Wife].

10. The family farm cash flow will not currently allow the payments which [Husband] promised to [Wife].

11. Restructuring of the debt of the family farm will allow for a refinance and will allow for [Husband] to renew his payments to [Wife].

12. Restructuring of the debt of the family farm is not possible unless [Wife]'s judgment is subordinated to the debt of the family farm.

13. The debt of the family farm was in place long before the dissolution and entry of the Property Settlement Agree-

ment as part of the normal family farm financing operations. (App.105–06).

The trial court held a hearing on Husband's motion on April 23, 2008. Julie Matthis, a representative of First Source Bank (the "Bank") testified that for several years Sunset Dairy had maintained an operating line of credit through the Bank and that the line of credit came up for renewal every April 15. She further testified that the line of credit obtained by Sunset Dairy on April 15, 2007, had expired.

According to Matthis, the Bank would renew the line of credit only if it continued to hold a first priority lien. Thus, it required Wife to subordinate her interests in Sunset Dairy's assets to the Bank before it would renew the line of credit.

Husband testified that he formed Sunset Dairy in 1992 and had maintained a line of credit for operating the farm since 1992. He also testified that he had not made the April payment to Wife because she refused to sign a subordination agreement. He further testified that he intended to use the line of credit to make future payments to Wife and continue the farming operation. According to Husband, the line of credit was necessary to continue both making the settlement payments to Wife and operating the farm.

On June 4, 2008, the trial court entered its order, granting Husband's motion and ordering "that the parties do all that is necessary to comply with this order allowing Husband to refinance the line of credit and any existing lien Wife has is to be subordinated...." (App.9). Thereafter, Wife filed a motion to correct error, which the trial court denied.

### DECISION

■ Wife first asserts that the trial court lacked authority to subordinate her judgment lien *after* the final decree was entered. We disagree.

■ A judgment lien is purely statutory. *ABN AMRO Mortg. Group, Inc. v. American Residential Serv., LLC*, 845 N.E.2d 209, 216 (Ind.Ct.App.2006). Indiana Code section 34–55–9–2 provides that "[a]ll final judgments for the recovery of money or costs ... constitute a lien upon real estate and chattels real liable to execution in the county where the judgment had been duly and entered and indexed...." In *Franklin Bank and Trust Co. v. Reed*, 508 N.E.2d 1256 (Ind.1987), *reh'g denied*, our Supreme Court determined that where one spouse is ordered to pay the other spouse money in installments, such final judgment automatically creates a judgment lien, "except where the exercise of the court's discretion would specifically eliminate it." 508 N.E.2d at 1259. Indiana Code section 31–15–7–8 provides that upon entering an order for disposition of property, the trial court "may provide for the security, bond, or other guarantee that is satisfactory to the court to secure the division of property." The trial court, however, "may exercise its inherent power and eliminate a judgment lien only by positive action." *Id.*

Wife contends that *Franklin* should be interpreted to mean that "[a] trial court may order the modification, limitation, or elimination of a lien as part of its' [sic] division of property, but *only* at the time the final decree is entered by express positive action." Wife's Br. at 8. A reading of *Franklin*, however, does not convince us that a trial court may modify a judgment lien *only* upon entering the final decree. Rather, *Franklin* provides that a judgment lien may be modified *only* by court action. Namely, it provides:

[T]he dissolution statute gives the court authority to overcome the judgment lien,

or to augment it, or to limit it. But silence of the court does not eliminate the automatic provision in the judgment lien statute. The court may exercise its inherent power and eliminate a judgment lien only by positive action.

508 N.E.2d at 1259. Thus, *Franklin* does not preclude the trial court's action.

■ Wife further asserts that the trial court improperly modified the Settlement Agreement where Husband failed to assert statutory grounds for modification. Indiana Code section 31–15–2–17 provides, in relevant part, as follows:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:

\* \* \*

(2) the disposition of any property owned by either or both of the parties[.]

\* \* \*

(b) In an action for dissolution of marriage:

(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms[.]

\* \* \*

■ (c) the disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.

Thus, "[a] property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent." *Myers v. Myers,* 560 N.E.2d 39, 42 (Ind.1990); *but cf. Russell v. Russell,* 693 N.E.2d 980, 983 (Ind.Ct. App.1998) (finding the modification of a property settlement agreement permissible "because it ensured that the ultimate property distribution coincided with the assets and debts actually existing at the time of the dissolution"), *trans. denied.* "A property settlement that is incorporated into a final divorce decree is a binding contract, and the dissolution court may not modify that settlement absent fraud, duress, or undue influence." *Rothschild v. Devos,* 757 N.E.2d 219, 223 (Ind.Ct.App. 2001). Such a policy promotes "the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties or the court mandates the division of the property among the parties," by eliminating "vexatious litigation which often accompanies the dissolution of a marriage." *Poppe v. Jabaay,* 804 N.E.2d 789, 793 (Ind. Ct.App.2004), trans. denied, cert. denied, 543 U.S. 1164, 125 S.Ct. 1333, 161 L.Ed.2d 138 (2005), *reh'g denied.*

In this case, the Settlement Agreement did not provide for future modification, and Wife did not consent to a modification of the Settlement Agreement as required by Indiana Code section 31–15–2–17(c). Moreover, Husband did not allege, and the trial court did not find, fraud, duress, or undue influence. Accordingly, a modification of the disposition of the marital property would constitute an abuse of discretion for failure to meet the statutory requirements for modification of a property settlement agreement.

On the other hand, we, however, do not find that the trial court's order constituted a modification.

When dissolving a marriage, the parties are free to draft their own settlement

agreement. Such agreements are contractual in nature and become binding upon the parties when the dissolution court merges and incorporates that agreement into the divorce decree. When interpreting these agreements, we apply the general rules applicable to the construction of contracts. That is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. Terms are not ambiguous merely because the parties disagree as to the proper interpretation of those terms. Our Supreme Court has determined that the dissolution court that enters a property settlement agreement is in the best position to resolve questions of interpretation and enforcement of that agreement and thus retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them. Nevertheless, in essence this remains an exercise in the construction of the terms of a written contract, which is a pure question of law, so our standard of review is de novo.

*Shorter v. Shorter*, 851 N.E.2d 378, 382–83 (Ind.Ct.App.2006) (citations omitted).

A modification is defined as "[a] change to something; an alteration[.]" BLACK'S LAW DICTIONARY 1025 (8th ed.2004). In

this case, the record shows that Husband had renewed the line of credit on or about April 15, 2007, creating a lien against Sunset Dairy's assets. The trial court then approved the Settlement Agreement and incorporated it into the final decree on May 7, 2007. As the line of credit existed at the time parties filed the Settlement Agreement, Wife's judgment lien was subordinate to the Bank's prior, existing lien. *See Huntingburg Prod. Credit Ass'n v. Griese*, 456 N.E.2d 448, 452 (Ind.Ct.App. 1983) ("Liens for judgments are subordinate to all prior legal or equitable liens."). We therefore cannot say the trial court modified the Settlement Agreement in ordering that Wife's judgment lien be subordinate to the Bank's lien.

More importantly, however, the parties failed to specifically address Wife's lien or its priority, if any, over other liens in the Settlement Agreement. In fact, the Settlement Agreement did not even recognize that Wife would have a judgment lien. Such an omission occurred despite both parties having knowledge of the line of credit; its necessity for maintaining Sunset Dairy's operations; and representation of both parties by counsel. Thus, we cannot say, where Wife's judgment lien originally was subordinate to the Bank's lien and the Settlement Agreement did not address the priority of Wife's judgment lien, the trial court modified the Settlement Agreement. Rather, it sought to enforce the Settlement Agreement as written.[1] *Cf.*

---

1. We note that "Indiana law on priorities of liens is clear that the taking of a new note and mortgage for the same debt upon the same land will not discharge the lien of the first mortgage unless the parties so intended." *Rebel v. Nat'l City Bank of Evansville*, 598 N.E.2d 1108, 1110 (Ind.Ct.App.1992). "A court considers the circumstances of the transaction and will not permit the release of the old mortgage and the execution and recording of the new mortgage to destroy the

lien of the original mortgage when not so intended, or rights of third parties have not intervened, or positions changed." *Id.* Where notes are renewals of prior indebtedness, an intervening lienor will not have a superior lien, and the original lien retains superiority. *See id.* In this case, the terms of the line of credit are not clear from the evidence before us. However, Matthis testified that the line of credit came up for renewal every year. If Sunset Dairy's indebtedness was merely being

*Phillips v. Delks*, 880 N.E.2d 713, 723 (Ind.Ct.App.2008) (finding no improper modification of a property settlement agreement, which provided that the husband would become the sole owner of the parties' vehicle, where trial court did not order the husband to transfer the ownership of the vehicle to the wife, but rather ordered him to sell or refinance it). We find no error.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

renewed every April 15, then the Bank's lien would have retained its superiority over

Wife's judgment lien.