**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 19 2013, 6:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**EDWARD P. GRIMMER**
**DANIEL A. GOHDES**
Edward P. Grimmer, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEES:

**WILLIAM H. TOBIN**
South Holland, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LAKE COUNTY TRUST COMPANY, TRUST 4210, TRUST 5061, and ALEX EMMANOILIDIS, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 45A03-1207-PL-309 |
| AOX, INC., and BRIAN PIUNTI, | ) ) ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John R. Pera, Judge
Cause No. 45D10-0808-PL-120

**July 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

A tenant moved its business into a commercial space, but quickly discovered the property was not constructed as promised by the landlord. The landlord ignored the tenant's complaints and instead sued the tenant for various reasons. After years of disputes, the tenant won a jury verdict against the landlord for breach of lease and malicious prosecution. We affirm.

FACTS AND PROCEDURAL HISTORY

In August 1998, AOX, Inc., entered into a ten-year lease with Trust Number 4210 ("the Trust") for property in Portage, Indiana, so that AOX could open a preventative automotive maintenance center. Under the lease, the Trust was to complete construction on the property and obtain an occupancy permit by the beginning of the lease term. The lease was signed by Alex Emmanoilidis, as beneficiary of the Trust; Lake County Trust Company, as trustee of the Trust ("the Trustee"); and Brian Piunti, as president of AOX.[1]

The lease term was supposed to start in November 1998, but AOX was unable to take possession of the property because the building was not certified for occupancy until January 15, 1999. This delay resulted in the lease term beginning February 1, 1999. *See* Plaintiff's Ex. 1, p. 2 (para. 4.1). However, on January 8, 1999, the Trust threatened to evict AOX for failure to pay the first rental installment, *see* Plaintiff's Ex. 14, even though it was not yet due. Ten days later, Emmanoilidis directed the Trustee to convey the leased property from Trust Number 4210 to Trust Number 5061, with no notice to

---

[1] The signature of the Trustee's representative does not appear on the lease provided in the record. The location for her signature says, "See Attached Signature Page," but no additional signature page is attached. Plaintiff's Ex. 1, p. 14. Nonetheless, the representative testified at trial that she signed a separate signature page that was inadvertently not copied. Tr. pp. 426-27.

Piunti.[2]  About two months after that, the Trust demanded payment for utility bills and for repairs made to damaged water pipes, again under the threat of eviction, *see* Plaintiff's Ex. 20, even though those expenses occurred prior to AOX's occupancy.

Piunti noticed numerous defects in the property and deviations from the plans and specifications as provided in the lease.  He informed Emmanoilidis of these issues as early as January 28, 1999, and onward through 2008.  *See* Plaintiff's Exs. 16, 18, 22, 23, 25, 27, 46, 55.  Emmanoilidis did not correct any of these defects and even stated at one point that he was "not going to fix shit."  Plaintiff's Ex. 36; *see also* Tr. p. 191.  Instead, he subjected Piunti and AOX to several lawsuits over the years, for example:

In March 1999, Emmanoilidis and his wife alleged Piunti had stolen windows, doors, and other building materials stored on the leased property and requested over $25,000 in damages.  More than ten years later, the trial court dismissed the case on Piunti's motion, noting that Emmanoilidis failed to respond to discovery requests and had not taken any action since filing the complaint.

In May 2000, Emmanoilidis directed the Trust to seek eviction, damages, and attorney's fees from Piunti and AOX for allegedly defaulting on the lease.  Along with the complaint, Emmanoilidis's son Arte Emmanoilidis filed an affidavit stating that Piunti and AOX had failed to pay real estate taxes and rent.  The parties later stipulated that AOX was current in rent payments.  In October 2001, the trial court found that the real estate taxes the Trust demanded included taxes on land that was not part of the leased

---

[2] It appears that Emmanoilidis continued to hold out Trust Number 4210 as the owner of the leased property.  Piunti testified that it was not until he instituted this lawsuit, around a decade after the conveyance, that he learned Trust Number 4210 was no longer the owner.

property and thus declined to evict AOX. The parties could not agree on the amount of taxes due, so the case proceeded to a bench trial. In December 2002, the court found AOX owed precisely the amount Piunti had calculated and offered to pay before trial. It thus withheld judgment to give AOX time to pay. AOX paid the same day, and the court never entered a final judgment.

In October 2004, Emmanoilidis again directed the Trust to sue Piunti and AOX. This time, the Trust accused AOX and its employees of criminal mischief for allegedly spraying soap and water on the parking lot while the asphalt was being sealed and sought damages and attorney's fees of $6000. The case went to trial in December 2007, and after no more than an hour of deliberations, the jury returned a verdict for Piunti and AOX.

In the beginning of 2008, nearing the end of the ten-year lease term, Piunti asked Emmanoilidis whether he would extend the lease to a new owner if Piunti decided to sell his business. Emmanoilidis said no. Piunti notified Emmanoilidis in February 2008 that AOX was exercising its option to extend the lease for another five years.

In August 2008, Piunti and AOX sued the Trust, the Trustee, Emmanoilidis, and his son Arte, alleging: (1) the Trust had breached the lease and continued to do so despite AOX's repeated notices, and (2) the defendants abused the judicial process by maliciously filing groundless suits to harass Piunti and AOX into terminating the lease. Trust Number 5061 was later added by amendment. The defendants answered, asserted the statute of limitation, and counterclaimed for damages and termination of the lease for

4

AOX's alleged breaches. The defendants later moved for partial summary judgment, which the court denied after a hearing.

The case was tried to a jury in June 2012. After the presentation of evidence, each party moved for judgment on the evidence. The court denied the defendants' motion except to the extent it dismissed Arte as a defendant and prohibited the real estate tax litigation from forming the basis of a malicious prosecution finding. The court granted the plaintiffs' motion, thereby directing out the defendants' counterclaim. The jury returned a verdict against the remaining defendants for breach of lease, assessing $179,322 in damages, and against Emmanoilidis for malicious prosecution and/or abuse of process, with $5950 in damages. The court entered judgment accordingly.

## ISSUES

Emmanoilidis, the two trusts, and the Trustee ("the Landlord") raise several issues on appeal:

I.     Whether Piunti and AOX ("the Tenant") are barred from claiming breach of lease.

II.    Whether the trial court erred by denying the Landlord's motion for judgment on the evidence.

III.    Whether the court wrongly granted the Tenant's motion for judgment on the evidence on the Landlord's counterclaim.

## DISCUSSION AND DECISION

### I. IS TENANT'S BREACH OF LEASE CLAIM BARRED?

The Landlord contends the Tenant's claim for breach is barred by: (1) the applicable statute of limitation; (2) the limitation period provided in the lease; (3) the

5

Tenant's extension of the lease; and (4) the Tenant's failure to raise it as a compulsory counterclaim in previous suits.

## A. Statute of Limitation

"Statutes of limitation seek to provide security against stale claims, which in turn promotes judicial efficiency and advances the peace and welfare of society." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1279 (Ind. 2009). When two statutes of limitation may apply, any doubt should be resolved by applying the longer statute. *Shaum v. McClure*, 902 N.E.2d 853, 855 (Ind. Ct. App. 2009), *trans. denied*.

The Landlord argues the Tenant's claim is barred by the six-year limitation period for "[a]ctions for use, rents, and profits of real property" provided by Indiana Code section 34-11-2-7(2) (1998). The Tenant responds that its action was timely under the ten-year limitation for "contracts in writing" provided by Indiana Code section 34-11-2-11 (2000).

The Landlord compares this case to *Hellyer Communications, Inc. v. WRC Properties, Inc.*, 888 F. Supp. 94 (S.D. Ind. 1995), in which the six-year period applied, but that case involved an action to recover overpayments of rent and was thus an "action for rent." The Landlord says the Tenant's claim is essentially for "deni[al of] use" when improvements were not constructed according to the lease and that the denial resulted in "excessive rent" and "loss of profits." Appellants' Br. p. 9.

The Landlord tries too hard to reformulate the Tenant's claim. The Tenant did not sue for use (indeed, it operated a business there for nearly ten years), nor did it seek to recover rent or profits from the property.

Instead, the Tenant's breach of lease claim sought to recover damages sustained as a result of the Landlord's failure to perform according to the written contract—that is, its failure to deliver the property according to the plans and specifications of the lease. We therefore conclude the claim is governed by the ten-year limitation period for contracts in writing and that the complaint was filed within that time.

## B. Limitation Period Provided in Lease

The Landlord next argues that the lease itself provides a one-year limitation period for filing suit. It refers to paragraph 32.11, but that provision merely imposes upon the Landlord a duty to repair or replace any defective workmanship or material discovered within a year of completion:

> Lessor guarantees all work performed in its construction of said store unit and parking lot areas against defective workmanship and materials for a period of one (1) years [sic] from the date of completion of such store unit and parking lot areas and shall accordingly at its own expense repair or replace any such defective workmanship and material evidenced with [sic] such one (1) year period.

Plaintiff's Ex. 1, p. 13. It provides no limitation period for filing suit for breach of obligations under the lease.

## C. Extension of Lease

The Landlord also claims the Tenant accepted the condition of the property by extending the lease and thus waived its breach of lease claim. While the Landlord's one-paragraph argument without citations or analysis arguably waives the point, it is plain enough the Tenant notified the Landlord of numerous defects in the property and deviations from the lease a few days before the lease term even began and repeated its

7

complaints up until this litigation began. The Tenant's decision to extend the lease can hardly be considered an acceptance of the defects where it had been demanding performance throughout the term.

## D. Compulsory Counterclaim

The Landlord further argues the breach of lease claim is barred for failure to raise it as a compulsory counterclaim in the earlier suits over taxes and the parking lot.

A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ind. Trial Rule 13(A). Two causes of action arise from the same transaction or occurrence when there is a logical relationship between them, that is, when the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim. *Hilliard v. Jacobs*, 927 N.E.2d 393, 401 (Ind. Ct. App. 2010), *trans. denied*.

The Landlord appears to claim that since all these disputes involve their landlord-tenant relationship, then they must arise out of the same set of operative facts. Other than the bare fact of the contract between the parties, though, the disputes have nothing in common. Each arose out of different events and required different facts to prove or disprove. The Tenant's breach of lease claim was not a compulsory counterclaim to the earlier suits. *See Reddick v. Carfield*, 656 N.E.2d 518, 522-23 (Ind. Ct. App. 1995) (tenant's suit seeking pro rata share of farm program payments for 1986 and 1987 crop

years was not a compulsory counterclaim to landlord's earlier action testing whether parties had valid agreement for 1988 crop year), *trans. denied.*[3]

## II. LANDLORD'S MOTION FOR JUDGMENT ON THE EVIDENCE

The Landlord next contends it was entitled to judgment on the evidence on grounds that: (1) the lease provided no plans and specifications from which the Tenant could sue for breach; (2) Emmanoilidis could not be held personally liable under the lease; and (3) there was no evidence that Emmanoilidis acted with malice or that he lacked probable cause to file the earlier suits.[4]

A motion for judgment on the evidence should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim. *Raess v. Doescher*, 883 N.E.2d 790, 793 (Ind. 2008). We review a trial court's ruling by considering only the evidence and reasonable inferences most favorable to the nonmoving party. *Id.*

### A. Plans and Specifications?

The Landlord argues the Tenant's breach of lease claim fails because the lease provided no plans and specifications on which the Tenant could sue.

The lease describes the property "as outlined in red on Site Plan dated 8-18-98, attached hereto and marked Exhibit 'A.'" Plaintiff's Ex. 1, p. 1 (para. 1.1). Although the

---

[3] Moreover, as to the real estate tax litigation, the court never entered a final judgment. *See Ratcliff v. Citizens Bank of W. Ind.*, 768 N.E.2d 964, 967 (Ind. Ct. App. 2002) ("When a party fails to file a compulsory counterclaim in the initial action, that claim is forever barred if the initial action has proceeded to judgment."), *trans. denied.*

[4] To the extent the Landlord argues the court erred in denying its motion for partial summary judgment, in admitting evidence, and in its instruction of the jury, those claims are waived for failure to provide a cogent argument and citations to authority.

9

actual page denoted as Exhibit A says "SITE PLAN" and is otherwise blank, the parties agree that a document with a red-outlined area showing details such as the location of the building, ingress and egress routes, and pavement on the leased property <u>is</u> Exhibit A.

The Landlord argues Exhibit A merely provides the location of the property and does not promise anything else shown—like ingress and egress routes—and thus, the Tenant cannot sue for failure to provide such items. We think whether Exhibit A was part of the obligations under the contract was for the jury to decide. *See Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010) ("When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder.").

The lease also provided that the Trust would construct certain improvements on the property for AOX "in accordance with the plans and specifications thereof," Plaintiff's Ex. 1, p. 1 (para. 3.1), and later referred to these plans and specifications as "the items specifically enumerated in Exhibit 'B,'" *id.* (para. 3.3). The actual page denoted as Exhibit B of the lease says "LIST OF IMPROVEMENTS FOR LESSEE" and is also otherwise blank. Several pages of oversized blueprints, however, show interior and exterior plans and specifications for the property.

The Landlord argues that since Exhibit B is blank, no plans and specifications were promised. The contract itself belies this claim, as another provision in the lease refers to a retention pond shown on Exhibit B. *See id.* at 7 (para. 13.2). Further, Piunti testified that Emmanoilidis provided him with the blueprints when they were negotiating the lease and that they constituted Exhibit B. Tr. pp. 143-47, 154.

10

In effect, the Landlord says a jury should be barred from finding that this fairly ordinary set of related documents constituted an enforceable contract. The court did not err by denying the Landlord's motion for judgment on the evidence on these grounds.

## B. Liability of Emmanoilidis

The Landlord also claims it was entitled to judgment on the evidence to the extent the Tenant sought to hold Emmanoilidis personally liable. The evidence suggests, however, that Emmanoilidis took a number of steps that indicated personal involvement inconsistent with the regular (and protective) boundaries of the trust form. These were trusts in name only.

For example, the Trustee's representative was not the only person who signed the lease as the lessor. Above the representative's signature, Emmanoilidis signed "as Beneficiary of Trust No. 4210." Plaintiff's Ex. 1, p. 14.

Although the Landlord says Emmanoilidis signed only on behalf of the Trust, the trust agreement clearly states that "[t]he beneficiaries are not the agents of the trustee for any purpose and do not have any authority to contract or to execute leases or do any other act for or in the name of the trustee" and instead "have the right to execute leases and collect rents in their own name." Plaintiff's Ex. 12, p. 2.

Moreover, the trust agreement gives the beneficiaries "the sole possession, management and control of the selling, renting, repairing, maintaining and handling of the property" and gives the trustee "no right nor duty in respect to any such matters." *Id.* Indeed, the Trustee's representative testified that the Trustee did not do anything with the Trust absent a directive from the beneficiaries. Tr. pp. 423-24.

11

Further, after the occupancy permit had been issued but before the lease term began, Emmanoilidis surreptitiously directed the Trustee to transfer the leased property from Trust Number 4210 to Trust Number 5061. This evidence raises an inference that Emmanoilidis was shifting the property to avoid liability. The court did not err by denying Emmanoilidis's motion for judgment on the evidence as to personal liability.

## C. Malicious Prosecution

To prove malicious prosecution, the Tenant had to show: (1) Emmanoilidis instituted or caused to be instituted an action against the Tenant; (2) Emmanoilidis acted with malice in doing so; (3) Emmanoilidis had no probable cause to institute the action; and (4) the original action was terminated in the Tenant's favor. *See City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001).

The Landlord argues there was no evidence of malice or lack of probable cause for filing the 1999 and 2004 lawsuits. Throughout trial, however, the jury heard evidence showing Emmanoilidis's long history of spiteful interactions with Piunti. As to the specific suits, Emmanoilidis sued Piunti for over $25,000 alleging he stole property but then ignored discovery requests and let the case hang over Piunti's head for over a decade before it was finally dismissed by the court for failure to prosecute. At the trial here, Emmanoilidis could only say, "I don't remember at that time why I did it and what was the reason for it. Okay. I don't remember, but there had to be a reason." Tr. p. 913. Emmanoilidis also sued Piunti and AOX for allegedly spraying the parking lot while it was being sealed, and although his son Arte testified at trial about the events leading up to and including the alleged spraying, that evidence was dubious at best. Against this

12

evidence, Piunti testified that it had just rained and the lot was still wet when the Landlord tried to seal it. *Id.* at 231.

The Landlord nonetheless claims the court was required to grant its motion for judgment on the evidence since the Landlord provided some evidence of probable cause. We do not agree. The jury did not have to, and apparently did not, believe the Landlord's evidence about probable cause. The court did not err by denying the Landlord's motion for judgment on the evidence on the malicious prosecution claim.[5]

### III. TENANT'S MOTION FOR JUDGMENT ON THE EVIDENCE

The Landlord also contends the trial court erred by granting the Tenant's motion for judgment on the evidence as to the Landlord's breach of lease claim.

To show the Tenant breached the lease, the Landlord had to prove the existence of a lease, the Tenant's breach thereof, and damages. *See Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012), *trans. denied*.

The Landlord did not show any damages at all during trial. After the presentation of evidence, as the court and the parties conferred on final instructions, the Landlord said for the first time at trial that it was not seeking damages but only termination of the lease. *See* Tr. p. 1083. As noted above, its counterclaim sought both damages and termination, but the trial proceeded as if the only relief requested was damages. *Id.* (after Landlord pointed out termination was sought in counterclaim, court said, "Well, but that's not a remedy that you sought here. That wasn't part of the issues instruction that I read to the

---

[5] The Landlord also argues the court should have granted its motion for judgment on the evidence on the abuse of process claim. The Landlord correctly defines abuse of process but then reverts to its same arguments about malicious prosecution. The issue is therefore waived.

jury."). The Landlord told the court that it wanted the jury to find all the elements save for damages and the court to award the equitable relief of termination. At that point, the Tenant understandably moved for judgment on the evidence for failure to present any evidence of damages.

The Landlord essentially sought a special verdict from the jury. A special verdict is "[a] verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict." *Black's Law Dictionary* 1593 (8th ed. 2004). Special verdicts have been abolished in Indiana. Ind. Trial Rule 49. The court therefore did not err by granting the Tenant's motion for judgment on the evidence.[6]

## CONCLUSION

We therefore affirm the trial court.

NAJAM, J., and MATHIAS, J., concur.

---

[6] In any event, we agree with the Tenant that the Landlord failed to show any breach, much less damages.

14