

IN THE

# Court of Appeals of Indiana

**B & L Drywall, LLC,**

*Appellant*



FILED

Jul 15 2024, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

**R.L. Turner Corporation,**

*Appellee*

---

July 15, 2024

Court of Appeals Case No.
23A-PL-2962

Appeal from the Boone Circuit Court

The Honorable Lori N. Schein, Judge

Trial Court Cause No.
06C01-1910-PL-1505

---

**Opinion by Judge Bailey**
Chief Judge Altice and Judge Mathias concur.

**Bailey, Judge.**

# Case Summary

B&L Drywall, LLC ("B&L") appeals the order granting summary judgment and damages to R.L. Turner Corp. ("RLTC") for B&L's breach of contract. We affirm.

# Issues

B&L raises the following two issues:

I. Whether the trial court erred when it denied B&L's motion for summary judgment and granted RLTC's motion for summary judgment.

II. Whether the trial court's damages award is erroneous.

# Facts and Procedural History

On March 29, 2018, RLTC, the Contractor, and B&L, the Subcontractor, entered into a written subcontract ("the Contract")[1] for B&L to do drywall work for RLTC at The Whittaker Inn ("the Project"). The work was to be done "in full accordance with the Plans, Specifications,[2] and any issued Addendum

---

[1] The Contract refers to itself as both "the Contract," "the Subcontract," and "the Subcontract Documents." To avoid confusion, we refer to it solely as "the Contract."

[2] The Contract—and both parties on appeal—refer repeatedly to the "plans," "specifications," and/or "drawings." Appellee's App. v. II at 5-23. However, neither party points to where in the designated

documents for this project." Appellee's App. v. II at 5, "THE WORK." The "Scope" of the work was, in relevant part:

> Provide labor/materials/equipment complete, provided in strict accordance with the plans and specifications[,] for the following: All drywall work, including finishing to Level 4 and 5 finishes on walls and ceilings as indicated on drawings and per the specifications and industry standards, in all areas.

*Id.*, "Scope." The "[w]ork associated with th[e] scope will be completed per RL Turner's project schedule(s)." *Id.*; *see also id.* at 18, § 9.5 ("Subcontactor shall perform work in accordance with [the] schedule provided by Contractor."). The "Contract Sum" to be paid by RLTC to B&L for performance of the work was $141,770.00. *Id.* at 6.

[4]  Section 7.3 of the Contract states, in relevant part, "The Contractor may, without cause, order the Subcontractor in writing to suspend, delay[,] or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine[, and] the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum." *Id.* at 17. Section 5.2 provides, in relevant part,

> The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract, consisting of additions, deletions, or other revisions…. [with t]ime being

---

evidence those plans, specifications, and/or drawings are located, and we were unable to locate those documents in the record.

adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time or the claim is deemed waived.

*Id*. at 16. Section 5.3 of the Contract states, in pertinent part, "The Subcontractor shall make all claims to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents, but in no event later than 14 days of the event that gives rise to the claims.... Claims not properly submitted will be rejected." *Id*.

Section 7.2 of the Contract provides, in relevant part:

> If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or to otherwise perform in accordance with this Subcontract and fails within forty-eight hours (48 Hrs) after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may supplement Subcontractor's workforce without prejudice to any other remedy, terminate the Subcontract[,] and finish the Subcontractor's Work by whatever method the Contractor may deem expedient.

*Id*. at 17.

Section 3.3.1 of the Contract provides that the Contractor may recover from the Subcontractor "consequential costs" and "actual damages" caused by the Subcontractor. *Id*. at 8. Furthermore, "[i]f the Subcontractor defaults … the Contractor may … make good such deficiencies and may deduct the reasonable

cost thereof from the payments … due the Subcontractor." *Id.*, § 3.4.1. The "Subcontractors will be back-charged for any additional cost and damages incurred by the Contractor due to the [S]ubcontractor's inability to complete the performance of their scope of work." *Id.* at 16, § 5.4(a); *see also id.* at 20, § 11.8.1 ("Subcontractor agrees that [C]ontractor may withhold or deduct from any sums due [S]ubcontractor under the [C]ontract for claims[,] damages, back-charges or other offsets that [C]ontractor may have against [S]ubcontractor on this project or any other contract or project."). In addition, "Subcontractor agrees to pay Contractor for all legal fees incurred by Contractor resulting from Subcontractor's default, claims against Subcontractor, or Subcontractor's noncompliance with any Contract provisions." *Id.* at 22, § 15.8.

[7] B&L performed a small amount of the work prior to December 2018 but could not do more before that time due to the work of other subcontractors. In December 2018, RLTC notified B&L to begin the bulk of the scope of work on the Project. B&L objected to the sequencing of the work—specifically, it objected that mechanical equipment had already been installed at the Project before (rather than after) the drywall was to be installed, and B&L therefore refused to proceed with drywalling as requested. However, B&L did not file a written claim for adjustment to the Subcontract Sum and/or Subcontract Time. On December 31, 2018, RLTC notified B&L in writing that B&L had "48 hours to rectify the Default. After such time [RLTC] will find an alternate contractor and B&L will be responsible for any and all costs associated with rectifying the Default." *Id.* at 50.

[8] B&L did not take any action within forty-eight hours of RLTC's December 31 written notice. Thereafter, RLTC engaged a replacement contractor to complete B&L's work on the Project for a total cost of $283,260.00. The replacement contractor finished the work and the Project passed inspection by the County.

[9] On October 8, 2019, RLTC sued B&L for breach of contract, seeking damages and attorney's fees. Specifically, RLTC alleged that B&L breached the contract by "fail[ing] to complete the work of the Contract." *Id*. at 3. RLTC sought a damages award of the difference between the price paid to the replacement contractor and the amount of the Contract Sum ($141,770)), plus an award of legal fees. Each party moved for summary judgment. Following a hearing on the motions, the trial court granted RLTC's motion for summary judgment and denied B&L's motion.

[10] The court subsequently held a hearing on damages, and, on November 29, 2023, issued its Final Judgment and Order on Damages. The trial court did not award RLTC the full amount it had claimed as payment to the replacement contractor (i.e., $283,260.00) because it found that RLTC was not entitled to alleged overhead loss or to damages "based upon charges for additional work beyond the scope of the Contract." Appealed Order at 3. The court found that RLTC had paid the replacement contractor $197,360 for the work B&L was

supposed to do,[3] and it awarded RLTC the difference between that amount and the Contract Sum.  In total, the court awarded RLTC $55,590 in damages, plus $40,407.50 in legal fees.  B&L filed this appeal.

# Discussion and Decision

## Summary Judgment

[11]    Both parties moved for summary judgment on RLTC's claims.  We review a grant or denial of a motion for summary judgment under the same standard used by the trial court; that is,

> [t]he moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact.  In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court.  *See* Ind. Trial R. 56(C), (H).  We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party.  The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.

---

[3] RLTC does not appeal the reduced amount of damages.

*Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012) (case quotations and citations omitted). In reviewing a summary judgment, we "consciously err on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).

[12] The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the contract. *See Perrill v. Perrill*, 126 N.E.3d 834, 840-41 (Ind. Ct. App. 2019), *trans. denied*. When the terms of a contact are clear and unambiguous, we will apply the plain and ordinary meaning of those terms and enforce the contract accordingly. *Id*. Under such circumstances, "contract cases are particularly suited for summary judgment." *Id*. However, when a "contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). A contract's terms are ambiguous "only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Perrill*, 126 N.E.3d at 841 (internal quotation and citation omitted).

[13] Here, the parties do not dispute the existence of the Contract; rather, they disagree only about which party breached it. B&L claims that it was RLTC who breached the Contract by expanding the scope of its Work beyond that contemplated in the Contract; that is, they contend that doing the drywalling after mechanicals had been installed would have required additional time and

expense. However, the clear and unambiguous terms of the Contract allowed RLTC, "without invalidating th[e Contact]," to set the schedule for the work,[4] "suspend" or "delay" B&L's work,[5], and/or "make changes [in writing] in the Work within the general scope of [the Contract], consisting of additions, deletions, or other revisions … [with t]ime being adjusted accordingly."[6] Therefore, B&L is mistaken when it claims that the change to the work was not contemplated by the Contract; the Contract clearly anticipated that changes could be made and provided for a procedure to be followed under such circumstances. RLTC did not breach the Contract by requesting that B&L do the drywall work after mechanicals had already been installed.

[14] Rather, it is B&L who breached the Contact terms by failing to follow the procedures clearly required by the Contact when RLTC changed the work to be done. When RLTC changed the scheduling of the work such that B&L would be required to undergo the more time consuming and costly action of placing drywalling after mechanicals had already been installed, section 5.2 of the Contract plainly required B&L to "submit promptly to [RLTC] written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time or the claim is deemed waived." *Id*. at 16. In addition, the plain and clear terms of the Contract required that, if B&L had a claim for "additional cost, extensions

---

[4] Appellee's App. at 5 ("Note" under subheading "Scope") and 18, § 9.5.

[5] *Id*. at 17, § 7.3.

[6] *Id*. at 16, § 5.2.

of time, and damages for delays or other causes," it was required to inform RLTC of the same within fourteen days or any such claim would be rejected. *Id.*, § 5.3. It is uncontested that B&L never submitted any "claim for adjustment" or any other claim but, rather, simply refused to do the work. That was a breach of the unambiguous terms of the Contract.[7]

[15] The terms of the Contract are clear and unambiguous. Those terms allowed RLTC to make a change to the work and required that B&L submit a claim if it believed the change in work would require additional time and/or expense. The designated evidence establishes that RLTC complied with the terms of the Contract when it made the change to work, but B&L did not comply with the Contract requirements that it submit claim(s) in response. There are no genuine issues of material fact, and RLTC is entitled to judgment as a matter of law. The trial court did not err in denying B&L's Motion for Summary Judgment and granting RLTC's Motion for Summary Judgment.

## Damages

[16] B&L challenges the damages award.[8] Generally, we will not reverse a damages award if it is within the scope of evidence before the trial court. *McLean v.*

---

[7] We note that, in its Complaint and Motion for Summary Judgment, RLTC alleged that B&L breached the Contract by failing to do the work but did not raise the more specific claim that B&L breached the Contract by failing to follow the Contract's procedures for addressing a change in the work. However, "we will affirm the trial court's ruling based on any theory supported by the evidence." *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006-07 (Ind. 2015).

[8] B&L does not challenge the legal fee award on appeal, only the damages award for the difference between the Contract Sum and what was paid to the replacement contractor. Moreover, we note that the Contract unambiguously provided that B&L agreed to pay RLTC for "all legal fees" it incurred as a result of B&L's

*Trisler*, 161 N.E.3d 1259, 1270 (Ind. Ct. App. 2020), *trans. denied*. "[I]f the award of damages is supported by the record, the determination of damages is within the sound discretion of the trial court." *Id*. (internal quotation and citation omitted). An abuse of discretion occurs when the trial court's action is against the logic and effects of the facts and circumstances before it. *Id*. In determining whether the trial court abused its discretion, we must only consider the evidence and reasonable inferences favorable to the non-moving party, and we may not weigh conflicting evidence or judge the credibility of witnesses. *Id*.

[17] B&L contends that the damage award is "not appropriate because it was not within the contemplation of the parties at the time the [C]ontract was entered into." Appellant's Br. at 22. However, as noted above, the unambiguous terms of the Contract show that the parties did contemplate that RLTC may change the work, and it provided procedures that B&L was required to follow under such circumstances. Because B&L did not follow those procedures but simply refused to do the work, it defaulted. *See* Appellee's App. at 17, § 7.2.1. And the clear and unambiguous terms of the Contract also provide for what may take place when the Subcontractor defaults: "the Contractor may supplement Subcontractor's workforce without prejudice to any other remedy, terminate the Subcontract[,] and finish the Subcontractor's Work by whatever method the Contractor may deem expedient," *id*., and the "Subcontractor will be back-

---

"default, claims against [B&L], or [B&L's] noncompliance with any Contract terms." Appellee's App. at 22, § 15.8.

charged for any additional cost and damages incurred" as a result, *id*. at 16, § 5.4(a). RLTC followed those procedures, and B&L therefore owes them their costs and/or damages.[9] *Id*.

[18] The trial court did not abuse its discretion when it awarded RLTC damages in the amount of the difference between the Contract Sum and the cost to pay the replacement contractor to do the work B&L was supposed to do.

## Conclusion

[19] The trial court did not err in denying B&L's Motion for Summary Judgment and granting RLTC's Motion for Summary Judgment as there are no genuine issues of material fact, and RLTC is entitled to judgment as a matter of law. And the trial court did not abuse its discretion when it awarded RLTC damages in the amount of the difference between the Contract Sum and the cost to pay the replacement contractor, as such an award was permitted by the unambiguous terms of the Contract.

[20] Affirmed.

Altice, C.J., and Mathias, J., concur.

---

[9] B&L does not challenge the amount of the damages award, only whether RLTC was entitled to damages at all. However, we note that the amount of damages was supported by evidence provided by RLTC at the damages hearing.

ATTORNEY FOR APPELLANT

Donald K. McClellan
McClellan & McClellan
Muncie, Indiana


ATTORNEY FOR APPELLEE

Michael L. Einterz, Jr.
Einterz & Einterz
Zionsville, Indiana