

FILED
Jun 03 2015, 7:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Deborah Farmer Smith
Campbell Kyle Proffitt LLP
Carmel, Indiana

ATTORNEY FOR APPELLEE

R. Lee Money
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Francis M. Laux,

*Appellant-Respondent,*

v.

Pauletta Leann (Laux) Ferry,

*Appellee-Petitioner*

June 3, 2015

Court of Appeals Case No.
29A02-1410-DR-719

Appeal from the Hamilton Superior
Court.
The Honorable Jerry M. Barr, Senior
Judge.
Cause No. 29D02-9804-DR-192

**Baker, Judge.**

[1] Francis Laux (Father) appeals the trial court's order on Pauletta (Laux) Ferry's (Mother's) petition to modify Father's child support obligation. Father raises the following arguments on appeal: (1) the trial court erroneously determined Father's child support obligation; (2) the trial court erroneously calculated Father's accrued child support underpayment. We find that the trial court erroneously credited Mother for Child's health insurance payments given that her husband (Stepfather) makes those payments and the trial court elected to treat Mother and Stepfather as separate financial entities. We find no other error. We affirm in part, reverse in part, and remand with instructions.

## Facts

[2] Mother and Father were married at some point in the past. One child, Child, was born of the marriage on August 28, 1996. Mother and Father were divorced in March 1999, when the trial court entered a decree of dissolution incorporating their settlement agreement.

[3] The parties' settlement agreement provided that Father would pay child support in the amount of $1,000 per month. At that time, Father's income totaled $1,615.38 per week.

[4] On August 20, 2013, Mother filed a petition to modify Father's child support obligation. The trial court held an evidentiary hearing on the petition on May 7 and May 28, 2014. At the hearing, the following evidence was offered:

- During the four-year period preceding the hearing, Father's income averaged $6,136 per week. At the time of the hearing, he was a self-

employed chiropractor with multiple offices in Marion County, and his weekly income during the year prior to the hearing totaled $4,943.50. Father testified that his income was "volatile" and "fluctuating." Appellant's App. p. 14.

- During that same four-year period, Mother's income declined from $2,884.61 to $462 per week, and her average weekly income totaled $249.66. At the time of the hearing, she was employed as a real estate agent.
- Father and Mother have both remarried and have spouses with whom they share household expenses.
- Stepfather pays for Child's health insurance. That cost is deducted from Stepfather's paycheck in an amount of $110.52 per week.
- Father speculated that his wife could provide insurance for Child through his employer at an amount of "somewhere about $50 to $60 a week. Maybe a little more, maybe a little less." Tr. p. 269-70.

The trial court found that Father's weekly income, for child support purposes, is $4,943.50, and that Mother's weekly income, for child support purposes, is $462. Additionally, the trial court observed that "[b]oth households enjoy significant economic advantages for the minor child . . . from the parents' and step-parents' contribution. The Court declines to impute income of either stepparent to Mother or Father." Appellant's App. p. 15. In relevant part, the trial court ordered that (1) Father's child support obligation was increased to a weekly amount of $443, (2) Father owed an increased amount of child support retroactive to the date of the filing of the petition to modify in the amount of $8,904, and (3) Mother was to continue to provide health insurance for Child. Father now appeals.

# I. Amount of Father's Child Support Obligation

[5] Father argues that the trial court erroneously calculated the amount of his child support obligation. He contends that the trial court erred in calculating Mother's income and Father's income and in ordering that Mother continue to provide Child's health insurance.

[6] On review, a trial court's calculation of child support is presumptively valid. *Bogner v. Bogner*, --- N.E.3d ---, 2015 WL 1944252, at *4 (Ind. 2015). When reviewing an order modifying a party's child support obligation, we will consider only the evidence and reasonable inferences favorable to the judgment. *Id.* We will set aside the trial court's judgment only if it was clearly erroneous. *Id.*

[7] Modification of a child support order is governed by Indiana Code section 31-16-8-1(b), which provides as follows:

> (b)   Except as provided in section 2 of this chapter, modification may be made only:
>
>> (1)   upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>>
>> (2)   upon a showing that:
>>
>>> (A)   a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>>
>>> (B)   the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

In this case, Father does not contend that the modification itself was erroneous; instead, he argues that the trial court erred in its calculations.

## A. Calculation of Mother's Income

Father contends that the trial court erred in calculating Mother's income. Weekly gross income is the sum of actual income, potential income if a parent is under employed, and imputed income based on "in kind" benefits. Indiana Child Support Guideline 3A(1).

## 1. Imputation of Income

First, Father argues that the trial court should have imputed Stepfather's income to Mother. The Commentary to the Child Support Guidelines addresses this issue:

> Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also *a fact-sensitive situation requiring careful consideration of the evidence in each case*. It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income. The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

Ind. Child Support Guideline 3A Commentary (d) (emphasis added). Our Supreme Court has held that a trial court may, indeed, choose to impute a spouse's income to a parent in calculating that parent's weekly gross income for

the purpose of child support. *Glass v. Oeder*, 716 N.E.2d 413, 417-18 (Ind. 1999).

[10] While there is ample authority standing for the proposition that a trial court *may* impute the income of a parent's spouse, we have found none—and Father directs us to none—that *requires* it. And indeed, as noted above, the commentary to the Child Support Guidelines explicitly notes that this decision is "fact-sensitive" and requires "careful consideration of the evidence in each case." Child Supp. G. 3A Cmt. (d). In this case, the trial court noted, and considered, the income provided by both Mother's and Father's spouses, and determined, under the facts of this case, that no imputation was warranted. We see no basis in the record before us to conclude that the trial court abused its discretion in this regard. Therefore, this argument is unavailing.

## 2.  Evidence of In-Kind Benefits

[11] Next, Father argues that the trial court erred by excluding evidence related to Stepfather's income and whether that income should be imputed to Mother as an in-kind benefit. Initially, we note that we have already concluded that the trial court did not abuse its discretion in declining to impute Stepfather's income to Mother.

[12] In preparation for the hearing, Father prepared a document identified as Respondent's Exhibit S, which related to his calculation of Mother's weekly gross income. He prepared this document himself, and it admittedly contained his own estimates of various figures based upon interrogatories, testimony, and

matters outside of the evidence. Tr. p. 273-74. Mother objected to the admission of this document based upon hearsay and speculation, and the trial court sustained her objection.

[13] Father attempts to reframe the issue on appeal as one of relevance. It is readily apparent, however, that the basis of the objection was hearsay and speculation rather than relevance. Furthermore, the documents on which Father based his calculations had already been admitted into evidence and were available for the trial court's review. In the end, although Exhibit S was not admitted into evidence, Father was able to testify regarding the way in which he had calculated Mother's income. Therefore, we find no error on this basis, and even if there had been error, it was harmless.

## 3. Credit for Child's Health Insurance Premium

[14] Next, Father argues that the trial court erred by crediting Mother the amount of Child's health insurance premium. Father contends that because it is Stepfather, rather than Mother, who actually pays this expense, it should not be credited to Mother.

[15] The weekly cost of Child's health insurance is undisputed. It is also undisputed that Stepfather, rather than Mother, pays this cost when it is deducted from his paycheck. We have already found above that it was not erroneous for the trial court to decline to impute Stepfather's income to Mother. In other words, it was not erroneous for the trial court to treat Stepfather and Mother as separate financial entities. But the trial court then changed course and elected to treat

Stepfather and Mother as the same, or coexistent, financial entities for the purpose of the cost of Child's health insurance. We do not believe that this inconsistency can stand.

[16] Had the trial court elected to impute Stepfather's income to Mother, it would have also made logical sense for it to credit Mother for Stepfather's payment of the health insurance premium, and there would have been no error. But having decided not to impute that income to Mother, the trial court erred by changing tack and crediting her for payments he had made. Under these circumstances, we believe the trial court abused its discretion by crediting Mother for the cost of Child's healthcare premium. We reverse and remand with instructions to recalculate the parties' respective child support obligations with no credit to Mother for the cost of Child's healthcare premium.[1]

## B. Calculation of Father's Income

[17] Next, Father argues that the trial court erroneously calculated his income for the purpose of child support. Specifically, Father contends that the trial court should have subtracted one-half of Father's self-employment tax from his income.

---

[1] Father also argues that the trial court erred by ordering that Mother continue to provide Child's health insurance. Given our ruling on the issue of credit for the health insurance payments, we need not address this argument. We note briefly, however, that Father did not file a petition to modify the parties' existing child support order, nor did he present evidence of "changed circumstances so substantial and continuing as to make the terms [of the existing child support order] unreasonable[.]" Ind. Code § 31-16-8-1(b)(1). Therefore, we find no error in the trial court's ruling on this issue.

[18] The Child Support Guidelines directly addresses this issue: "The self-employed shall be permitted to deduct that portion of their FICA tax payment that exceeds the FICA tax that would be paid by an employee earning the same Weekly Gross Income." Ind. Child Support Guideline 3A(2). The Commentary elaborates:

> The self-employed pay FICA tax at twice the rate that is paid by employees. At present rates, the self-employed pay fifteen and thirty one-hundredths percent (15.30%) of their gross income to a designated maximum, while employees pay seven and sixty-five one-hundredths percent (7.65%) to the same maximum. The self-employed are therefore permitted to deduct one-half of their FICA payment when calculating Weekly Gross Income.

Ch. Supp. G. 3A Cmt. (2)(a).

[19] In this case, the trial court did not deduct one-half of Father's FICA payment from his income. In arriving at its income calculation, however, the trial court relied on *Father's own* child support worksheet. Indeed, the trial court used precisely the same calculations, and arrived at precisely the same result, as Father did.

[20] If there was an error, therefore, it was an invited error. *See Trabucco v. Trabucco*, 944 N.E.2d 544, 551 (Ind. Ct. App. 2011) (holding, where husband argued that the trial court erred in calculating his income for child support, that "Husband invited the error by failing to present sufficient evidence of his actual income"). But we find no error at all, inasmuch as the final income figure arrived at by the trial court was well within the scope of the evidence before it. *See, e.g.*, *Eppler v. Eppler*, 837 N.E.2d 167, 173 (Ind. Ct. App. 2005) (holding that if the trial

court's child support income figure includes the income required by the Child Support guidelines and falls within the scope of the evidence presented at the hearing, the trial court's determination is not clearly erroneous). Consequently, we find no error on this basis.

## II. Retroactive Child Support Amount

Finally, Father argues that the trial court erred in determining the amount he owes in retroactive child support. It is well established that "the trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed or any date thereafter chosen by the trial court." *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 763 (Ind. Ct. App. 2013), *trans. denied*.

In this case, Mother filed her petition to modify the child support arrangement on August 20, 2013. Before that date, Father's child support obligation totaled $1,000 per month, or approximately $231 per week. The trial court granted Mother's petition to modify, however, increasing Father's child support obligation to $443 per week. The issue, therefore, is the amount of additional child support owed by Father dating back to August 20, 2013.

Father claims that he presented evidence that at some point, he began voluntarily paying an extra $100 per month in child support. Tr. p. 234-35. Father offered no evidence of the date on which he began overpaying, nor did he offer any documents to support his assertion. Moreover, Father

acknowledges that he was required to—and did—pay for half of Child's extracurricular expenses, the cost of which has increased over the years.

[24] The trial court would have been within its discretion either to discount Father's unsupported testimony regarding an alleged overpayment or to determine that the overpayment was intended to cover Father's share of Child's extracurricular expenses. We see no basis to conclude that the trial court abused its discretion in declining to credit Father for a child support overpayment of $100 per month, and find no error in its calculation of the amount of retroactive child support owed by Father.

[25] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to recalculate (1) Mother's income with no credit for Child's health insurance payment, (2) Father's child support obligation given the adjustment to Mother's income, and (3) Father's retroactive child support owed given the adjustment to Father's child support obligation.

Friedlander, J., and Crone, J., concur.