ATTORNEY FOR APPELLANT
Bruce A. Kotzan
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Michael G. Ruppert
Jaimie L. Cairns
Indianapolis, Indiana



FILED
Dec 12 2013, 11:46 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S05-1303-DR-199

RICHARD ERIC JOHNSON,

*Appellant (Petitioner below),*

v.

GILLIAN WHEELER JOHNSON,

*Appellee (Respondent below).*

Appeal from the Marion Superior Court, No. 49D03-9906-DR-000898
The Honorable Patrick L. McCarty, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1202-DR-81

**December 12, 2013**

**David, Justice.**

The Indiana Child Support Guidelines provide both structure and flexibility for trial courts to set and modify child support obligations in ways tailored to the circumstances of the parties before them. The Guidelines obligate trial courts to follow certain processes and consider certain factors, but there remains a degree of latitude within which a court may fashion an order that best meets the needs of the child and also reflects the financial realities of the parents.

Here, the trial court modified a prior child support order in several respects and the noncustodial parent appealed. The Court of Appeals affirmed in part and reversed in part,

including reversing the trial court's determination of credits for the custodial parent's health insurance costs and the noncustodial parent's Social Security benefits. We grant transfer and affirm the trial court on those two issues, finding its approach to be appropriate in light of the flexibility afforded by our Guidelines, and summarily affirm the Court of Appeals in all other respects.

## Facts and Procedural History

Eric and Gillian Johnson married in 1994 and divorced in 1999, with two children resulting from the marriage. They executed a comprehensive settlement agreement, later approved by a trial court in a 1999 divorce decree, under which Gillian was granted physical custody of the two children with both parties sharing legal custody. As another part of that agreement and decree, Eric was ordered to pay Gillian ninety dollars per week, per child, for child support and also maintain health insurance for the children. Eric and Gillian also agreed to each pay fifty percent of the children's uninsured healthcare expenses.

In 2003, Eric retired from the Marion County Sheriff's Department, terminating his eligibility for group insurance coverage. He and Gillian agreed to a modification of the 1999 decree that required Gillian to obtain a health insurance policy for their two children from her employer, and dropped Eric's weekly child support to seventy-five dollars per week, per child.[1]

---

[1] This reduction was not a result of Eric's retirement; the original child support calculation apparently did not factor in three children that Eric had prior to his marriage with Gillian.

In 2011, Eric sought to modify the 1999 decree again. Eric was now receiving Social Security Retirement benefits and because of that Gillian was receiving a monthly benefit for each child. Eric sought to credit that amount against his child support obligation. He also sought to modify his obligation to pay a percentage of the children's higher education costs and his parenting time allotment. Gillian responded, alleging that she had incurred uninsured health care expenses for which Eric had not paid his fifty percent share and also requesting an order that Eric pay a portion of the children's extracurricular expenses.

The parties also disagreed as to the amount of credit Gillian was owed in the child support calculation because of the cost for her to insure the two children. Gillian's employer offered three plans: an individual employee plan, for $.08 per month; an individual plus one plan, for $379.02 per month; and a family plan, for $494.54 per month. Gillian was on the family plan in order to insure everyone—however, by this point she had another child outside of the two from her marriage to Eric. Eric therefore claimed that her base insurance cost was that of the individual plus one plan, and she should be awarded a credit equal only to the difference between that plan and the family plan—an amount that calculated to $26.75 per week. Gillian, however, claimed that her credit should be two-thirds of the cost of insuring all three of her children. In other words, the cost for each child would be the cost of the family plan minus the amount for Gillian's individual coverage, divided by three; the credit for the two children would then be two-thirds of that amount—or $76.67 per week.

The trial court credited Eric for the children's Social Security benefits by including the benefits in Gillian's weekly adjusted income on the child support obligation worksheet. It then gave Gillian a credit in the amount of $76.67 per week for the cost incurred in obtaining health insurance. The net result reduced Eric's child support obligation to a total of $138 per week, down from $150 per week. It also ordered Eric to pay additional money for uninsured health expenses incurred by the children, up to fifty percent of the costs, denied Eric's request to

3

modify his obligation to contribute to the children's higher education expenses, and modified the parenting time and transportation cost provisions of the 1999 decree.

Eric appealed, claiming the trial court erred in assessing his obligation to pay uninsured health expenses, applied an inappropriate credit to Gillian when determining her health insurance costs, erred in its modification of the parenting time, transportation cost, and extracurricular expenses provisions of the 1999 decree, improperly denied his request to modify his secondary education obligation, and improperly computed the credit resulting from his Social Security benefits. The Court of Appeals, in an unpublished memorandum decision, affirmed in part and reversed in part. Johnson v. Johnson, 979 N.E.2d 718 (Ind. Ct. App. 2012). It affirmed the trial court's calculation of uninsured health care expense obligations, modification of parenting time, and the denial of Eric's request to modify his higher education obligation. Id. at *1. It reversed, however, on the issues of Gillian's health insurance credit, transportation costs, extracurricular expenses, and the credit for Eric's Social Security Retirement benefits. Id.

Both Eric and Gillian sought transfer, which we grant only to address the trial court's calculation of Gillian's health insurance credit and the application of Eric's Social Security Retirement benefits. We summarily affirm the Court of Appeals decision in all other respects. Ind. Appellate Rule 58(A).

**Standard of Review**

The trial court's judgment here included specific findings of fact and conclusions of law. The conclusions of law are reviewed de novo. Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010). But pursuant to Trial Rule 52(A), we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Factual findings are only clearly erroneous where there is no

4

support for them in the record, either directly or by inference; a judgment is only clearly erroneous when it applies an improper legal standard to proper facts. Johnson v. Wysocki, 990 N.E.2d 456, 460 (Ind. 2013). "In either case, we must be left 'with the firm conviction that a mistake has been made.'" Id. (quoting Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997)).

### I. Gillian's Credit for Health Insurance Premiums

Indiana's Child Support Guidelines provide that "[t]he weekly cost of health insurance premiums for the child(ren) should be added to the basic obligation whenever either parent actually incurs the premium expense or a portion of such expense." Ind. Child Support Guideline 3(E)(2). The commentary to this Guideline explains that this is accomplished by giving a credit to the parent who actually pays the cost; but "[i]f health insurance coverage is provided through an employer, only the child(ren)'s portion should be added and only if the parent actually incurs a cost for it."

The commentary to Guideline 7, explaining how to apply this credit on the Health Insurance Premium Worksheet, says that the amount credited should be "the cost of the child's portion, if known, or the difference between the cost of insuring a single party versus the cost of family coverage." It also notes that unique circumstances may arise, including those involving subsequent spouses and/or children, and "[t]he treatment of these situations rests in the sound discretion of the court, including such options as prorating the cost." Child Supp. G. 7, cmt.

Again, Eric's position was that the amount credited here should equal the difference between the family coverage plan and the individual plus one plan, because Gillian needed to insure her other child regardless. Gillian's position was that the amount credited should be two-thirds the cost of insuring all three of her children. The trial court found that Eric's $26.75 per week credit was unfair "because [Gillian] cannot insure the parties' children for that amount."

5

(App. at 16.)  On the other hand, it found Gillian's proposed $76.67 credit equitable "because she only gets a credit for two-thirds of the cost, and, thus, if she sought child support for her subsequently born child and received a one-third credit for his portion of the premium she would ultimately receive credit for the actual amount of health insurance premium costs she pays." (App. at 16.)

We recognize that Eric's position has merit, in that the trial court's division of the health insurance premium could be construed as requiring him to pay a portion of the cost to insure Gillian's third child.  And the fact that that Gillian apparently receives no support from the father of her third child is certainly not Eric's fault.

Nevertheless, that does not mean this assessment of a credit is clearly erroneous.  For one thing, even if Gillian did not have her subsequent child she could not insure the two children under the individual plus one plan—she would still have to pay the full cost of the family plan. Eric's proposal therefore could not represent the cost Gillian actually incurred in obtaining health insurance for their two children.

And for another thing, because Gillian *does* have the subsequent child, the trial court's apportionment assigns each child an equal monetary value with respect to this credit.  In theory, if Gillian obtained child support from the father of the subsequent third child, that amount would be reflected as a credit equal to the amount credited for one of her and Eric's children.  Eric's proposal, however, would result in Gillian receiving a substantially larger credit for that third child than for the other two.

While this certainly works to Eric's benefit, it would have the reverse impact on that third child's father.  Under Eric's proposal, Gillian would be responsible for her own coverage and Eric would be responsible for the difference between the individual plus one plan and the family plan—around $115 per month.  The third child's father, however, would be responsible for the

6

difference between Gillian's individual plan and the individual plus one plan—just a little under $380 per month.

In sum, while we acknowledge that other trial courts might approach this issue differently, when the Guidelines do not explicitly dictate a bright-line procedure to be followed our standard of review is flexible enough to permit the trial court judge to fashion child support orders that are tailored to the circumstances of the particular case before them and consequently reflect their best judgment. Here the trial court fashioned a solution that it believed was equitable to the parties and we are not left with a firm conviction that a mistake was made by its doing so. We therefore affirm the trial court with respect to the credit Gillian received for her health insurance premium costs.

## II.    Eric's Social Security Retirement Benefits

A parent's child support obligation may also be subject to an adjustment for Social Security benefits. Child Supp. G. 3(G)(5). Social Security Disability benefits are automatically included in the weekly gross income of the noncustodial parent and applied as a credit to his or her child support obligation. Child Supp. G. 3(G)(5)(a)(2)(ii). Social Security Retirement benefits, however, "may, at the court's discretion, be credited to the noncustodial parent's current child support obligation. The credit is not automatic. The presence of Social Security Retirement benefits is merely one factor for the court to consider in determining the child support obligation or modification of the obligation." Child Supp. G. 3(G)(5)(a)(2)(i). The rationale for this Guideline arose in Stultz v. Stultz, 659 N.E.2d 125 (Ind. 1995).

In Stultz, a noncustodial father sought to modify his child support obligation to reflect, in part, Social Security Retirement benefits being paid directly to his children. The trial court denied the modification, finding the retirement benefits were not income for either the children

7

or retiree, but instead a benefit made available to the children at no cost to a retiree. It also noted that the Indiana Code required trial courts to consider, among other things, "the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered" in fashioning (or modifying) a child support order. Id. at 127. And had the Stultz's marriage not dissolved, "the children would have enjoyed the benefit of all of the [mother's] income plus the retirement, plus the social security retirement benefits they received, plus the [father's] income." Id.

The Court of Appeals reversed, holding that a parent ordered to pay child support is always entitled to a credit for any Social Security benefits received by that parent's children. Id. at 126. It relied on a case holding that a disabled parent was entitled to receive a credit against his or her child support obligations in an amount equal to Social Security Disability benefits received by the child. Id. at 127; see Poynter v. Poynter, 590 N.E.2d 150 (Ind. Ct. App. 1992), trans. denied. The Court of Appeals equated Social Security Retirement benefits to Social Security Disability benefits, and concluded that the trial court had no discretion not to award the noncustodial parent a credit for those benefits received. Stultz, 659 N.E.2d at 128.

We disagreed and affirmed the trial court, noting first that on a dollar for dollar credit system, the result reach by the Court of Appeals would effectively have reduced the father's obligation to nothing. Id. at 126. But we also found significant case law supporting the view that a credit for Social Security Retirement benefits was not automatic, and rather was "merely one factor for the trial court to consider in determining the child support obligation or modification of the obligation." Id. at 128. And the trial court reviewed a number of factors in reaching its decision, not the least of which was the statutory consideration of the standard of living the children would have enjoyed had the marriage lasted—and that standard of living would have included the benefits of the father's retirement. Id.

We refused to completely foreclose "the possibility of other trial courts, in certain cases, granting a credit to a social security recipient parent for benefits received by a child," but nevertheless anticipated "that such a credit will generally be denied, at least with respect to social security *retirement* benefits."[2] Id. at 128–29. "Congress has created an entitlement for the minor children of all social security participants who retire. But it is the children's entitlement, not the retiree's, and should not as a general rule diminish the legal obligation of retirees to support their children." Id. at 130.

Here, the trial court engaged in a two-step analysis in determining if Eric should receive a credit for his children's Social Security Retirement benefits, and if so, in what amount. Looking first to the statutory factors governing the determination of child support, it focused on Eric and Gillian's financial resources and the standard of living the children would have enjoyed had their parents remained married.[3] It found that Gillian was the sole wage-earner in a family of four, whereas Eric's household consisted only of Eric and his new wife—who was employed full-time—and that both Eric and Gillian had been able to increase their savings in recent years. It also found that if it applied a dollar for dollar credit, the children's standard of living would be reduced by more than thirty percent.

---

[2] This particular point was not adopted into the Guidelines.

[3] Those factors are now codified at Indiana Code § 31-16-6-1(a) (Supp. 2013), and include:

> (1) the financial resources of the custodial parent;
> (2) the standard of living the child would have enjoyed if:
>     (A) the marriage had not been dissolved; or
>     (B) the separation had not been ordered; or
>     (C) in the case of a paternity action, the parents had been married and remained married to each other;
> (3) the physical or mental condition of the child and the child's educational needs; and
> (4) the financial resources and needs of the noncustodial parent.

9

It did determine, however, that Eric was entitled to some credit in the determination of his child support because of the Social Security Retirement benefits. To determine the amount, the trial court cited a footnote in Stultz, in which this Court said

> [I]n those situations where the trial court concludes that it is appropriate to give a Social Security recipient parent credit for Social Security benefits paid directly to a child, the trial court should in fact include the amount of the benefits in the recipient parent's adjusted income for purposes of calculating the parents' relative share of the total child support obligation.

(App. at 14 (citing Stultz, 659 N.E.2d at 126 n.2).) It therefore included the Social Security Retirement benefits in Gillian's weekly adjusted income on the child support worksheet.

On appeal, Eric argues that "[t]his approach set the basic support obligation at a higher level than the children would have enjoyed had the family remained intact and thereby devoted a substantially higher percentage of total family income to the children's support." (Appellant's Br. at 32.) Instead, he says, "an adjustment for Gillian's receipt of these funds should be shown as a credit to him on line 7 of the [child support worksheet]." (Appellant's Br. at 32.) This, he concedes, would have resulted "in a negative support amount." (Appellant's Br. at 36 n.3.) We cannot agree with his proposal.

We recognize that determination of how to apply a child's receipt of Social Security Retirement benefits in a child support order can be complicated, and present challenges to a trial court—and not applying those benefits poses the risk that the trial court may fashion a child support order under which "the children of divorcing parents enjoy a standard of living much greater than that which they enjoyed pre-dissolution." Thompson v. Thompson, 868 N.E.2d 862, 865 (Ind. Ct. App. 2007). This would most certainly be the opposite—but equally inappropriate—danger of applying the Poynter methodology.

10

And we likewise agree—and our Child Support Guidelines now reflect—that a mechanical application of the trial court methodology in <u>Stultz</u> (i.e., a strict denial of credit) would be improper, and the opinion "should be applied to provide for the exercise of the trial court's discretion." <u>Id.</u> at 868 (encouraging use of methodology from <u>Stultz</u>'s footnote 2). "[U]tilizing such a methodology will promote the aims of the Support Guidelines, will treat similarly situated families the same, and will provide for children receiving the same degree of support post-dissolution that they had when their parents' marriage was intact." <u>Id.</u>

Eric's claim—that the trial court's order gives his children a higher standard of living than they would have enjoyed had their parents' marriage continued, and devotes a substantially higher percentage of total family income to child support—is language pulled from <u>Thompson</u>. <u>See id.</u> at 869. The implication of his argument is that this language is the lens through which we should review the modification of his child support order. We disagree.

We do not read <u>Thompson</u> as setting forth the test for reviewing every determination of a credit for Social Security Retirement benefits. Rather, the case very articulately expresses two extreme approaches for that credit. On one end there are those instances where the trial court provides a dollar for dollar credit to the noncustodial parent, effectively wiping away the child support obligation. <u>See id.</u> at 868. And on the other end are those cases where the child support obligation is determined without any consideration of the benefits, effectively providing the child—and custodial parent—with a windfall. <u>See id.</u> At and beyond those two boundaries, <u>Thompson</u> said, generally lies the abuse of the trial court's discretion.

The trial court here followed neither of those extreme approaches. Instead, it followed the flexible methodology set forth in <u>Stultz</u>, encouraged in <u>Thompson</u>, and reflected in the Child Support Guidelines. And it reached an amount somewhere in between the two extremes. Moreover, without needing to assess whether that determination was in and of itself clearly erroneous, Eric's proposed alternative—a dollar for dollar credit effectively negating his child

11

support obligation—is expressly prohibited by both <u>Stultz</u> and <u>Thompson</u>. Essentially, he is asking us to revisit <u>Stultz</u> and hold that the entitlement owed to his children by the government should relieve him of his financial obligation to provide support. This we will not do.

## Conclusion

We therefore affirm the trial court order with respect to the calculation of Gillian's health insurance premium credit and application of Eric's Social Security Retirement benefits. We summarily affirm the Court of Appeals as to the remaining issues.

Dickson, C.J., Rucker, Massa, and Rush, J.J., concur.