## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 03 2018, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Trenna S. Parker
Trenna S. Parker Law Office, P.C.
Noblesville, Indiana

ATTORNEYS FOR APPELLEE-
STATE OF INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of:<br><br>William Lynch,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Lisa Lynch,<br><br>*Appellee-Respondent,*<br>and<br><br>State of Indiana,<br><br>*Appellee-Intervenor.* | April 3, 2018<br><br>Court of Appeals Case No.<br>29A02-1710-DR-2484<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable Jonathan M.<br>Brown, Judge<br><br>The Honorable Katherine M.<br>Varie, Master Commissioner<br><br>Trial Court Cause No.<br>29D02-1103-DR-2830 |

**Najam, Judge.**

# Statement of the Case

William Lynch ("Father") appeals the trial court's order modifying his child support obligation.[1]  Father raises two issues for our review, which we restate as follows:

> 1. Whether the trial court erred when it calculated Father's current child support obligation.
>
> 2. Whether the trial court erred when it interpreted the parties' Agreed Entry and found that the modification of the child support order was retroactive to the date of Father's motion to modify.

We affirm.

# Facts and Procedural History

Father and Lisa Lynch ("Mother") were married on November 28, 1992. During their marriage, Father and Mother had three children:  A.L., born August 27, 1994; M.L., born February 12, 1997; and J.L., born October 1, 2003.  On March 29, 2011, Father filed a petition for dissolution of the marriage.  The parties entered into a mediated settlement agreement, which the trial court incorporated into its dissolution decree issued on February 17, 2012.

The settlement agreement provided that Father and Mother would have joint legal custody of the children but that Mother would have physical custody,

---

[1] Mother does not participate in this appeal.

subject to Father's parenting time with M.L. and J.L. Father also agreed to pay $322 per week in child support, which he would pay directly to Mother, and to maintain health insurance for the children. Subsequently, Mother assigned the enforcement of her support rights to the State. On March 14, 2013, the State intervened and filed a petition to redirect payments and determine arrears.

[5] On August 29, Father filed a petition for emancipation of A.L. Thereafter, Father and Mother entered into a Mediated Agreed Entry ("Agreed Entry"), which the trial court approved. The Agreed Entry modified certain provisions of the original settlement agreement and detailed the new amount of child support that Father was required to pay for M.L. and J.L.

[6] In relevant part, the Agreed Entry provided as follows:

> 1. The parties' daughter, [A.L.], is emancipated for child support purposes as of August 27, 2013[,] and Father's weekly child support obligation is modified to $225.00 . . . . Father will pay child support monthly in the amount of $975.00 beginning June 1, 2014[,] and on the first of each month thereafter until future modification.
>
> * * *
>
> 3. The parties' daughter, [M.L.], will be 19 years of age on February 12, 2016[,] and emancipated for child support purposes by operation of law, unless statutory reasons exist prior to that date which would prevent her emancipation for child support purposes.

Appellant's App. Vol. III at 18.

[7]     On May 24, 2017, Father filed a petition for emancipation of M.L. and a motion to modify his child support obligation. In that motion, Father requested that the order modifying his child support payments be applied retroactively to February 12, 2016, M.L.'s nineteenth birthday. On June 15, 2017, Father, Mother, and the State entered into an agreement to temporarily modify Father's child support obligation. The parties agreed that, by operation of law, M.L. was emancipated for child support purposes; that Father shall pay $166 per week in child support to Mother; and that Father shall receive credit for zero annual overnight visits with J.L. The parties also agreed that that modification was temporary and that the retroactivity of the final order was to be determined at a final modification hearing.

[8]     The trial court held the final modification hearing on August 30, 2017. Following the hearing, the court entered its order modifying child support. In that order, the court found as follows:

> a.      Father is employed at SKJODT-Barrett Contract Packaging, LLC where he earns a gross weekly income of $1,226.00. Additionally, Father receives regular income from military benefits in the amount of $102.00 per week. The court finds that Father's gross weekly income for child support purposes is $1,328.00.
>
> b.      Mother was employed for approximately three years at Frost Todd Brown [sic] earning $1,095 per week. In July 2015, she voluntarily left that employment to work part-time and to care for her children and step-children. From August 2015 to early June 2017, Mother was employed part-time with GO Company where she earned $18.00 per hour. According to

Mother's 2016 federal tax return, her gross 2016 wages from GO Company were $24,501.00 or $471.00 per week. From April 2017 until June 2017, Mother worked part-time, 15 hours per week, at TPPN where she earned $20.00 per hour. Mother transitioned into full-time employment with TPPN in July 2017. Mother earns $20.00 per hour and works 35-38 hours per week. The Court finds that Mother's gross weekly income for child support purposes is $760.00 ($20/hour * 38 hours/week).

    c.    Father incurs a weekly health insurance premium for the child in the amount of $6.70 per week. The foregoing is based on the following:

        i. Father maintains health, dental, and vision insurance for the child.

        ii. Father's health, dental, and vision plans cover himself, his spouse and four children (including [J.L.]).

        iii. Health insurance premium:

            1. Father's health insurance premium is $142.90 biweekly for a family plan.

            2. Father's health insurance premium would be $98.71 biweekly for him and his spouse.

            3. Father's weekly health insurance premium for [J.L.] is $5.52 = (($142.90 - $98.71)) / 4 children x 26 pay periods/52 weeks).

        iv. Dental insurance premium:

1. Father's dental insurance premium is $12.66 biweekly for a family plan.

2. Father's dental insurance premium would be $6.98 biweekly for him and his spouse.

3. Father's weekly dental insurance premium for [J.L.] is $0.71 = (($12.66 - $6.98)) / 4 children x 26 pay periods/52 weeks).

v. Vision insurance premium:

1. Father's vision insurance premium is $9.51 biweekly for a family plan.

2. Father's [vision] insurance premium would be $5.78 biweekly for him and his spouse.

3. Father's weekly [vision] insurance premium for [J.L.] is $0.47 = (($9.51 - $5.78)) / 4 children x 26 pay periods/52 weeks).

d.     The Mediated Agreed Entry included 73 overnights for Father's parenting time credit. In the past year, Father has not exercised parenting time with the minor child, has not requested parenting time since Christmas break in 2015 and has not filed a petition with the Court to secure parenting time. Consequently, Father is given credit for 0 annual overnights.

*Id.* at 28-29. Based on those findings, the court modified the amount Father was required to pay in child support to $171 per week.

The trial court also found that the "language of the Mediated Agreed Entry is unambiguous" and that "[t]o modify child support retroactively to [M.L's] emancipation date pursuant to paragraph three of the Mediated Agreed Entry is to ignore the clear and unambiguous language of paragraph one requiring Father to pay his monthly child support obligation *until further modification*." *Id.* at 28 (emphasis in original). As such, the trial court found "that the modification is retroactive to the date of the filing of the Motion to Modify, May 24, 2017[.]" *Id.* This appeal ensued.

# Discussion and Decision

## Issue One: Order Modifying Child Support

### Standard of Review

Father first appeals the trial court's order that modified the amount of his child support obligation. Where, as here, the order included specific findings of fact and conclusions of law our standard of review is well-settled.

> The conclusions of law are reviewed de novo. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). But pursuant to Trial Rule 52(A), we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Factual findings are only clearly erroneous where there is no support for them in the record, either directly or by inference; a judgment is only clearly erroneous when it applies an improper legal standard to proper facts. *Johnson v. Wysocki*, 990 N.E.2d 456, 460 (Ind. 2013). "In either case, we must be left 'with the firm conviction that a mistake has been made.'" *Id.* (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997)).

*Johnson v. Johnson*, 999 N.E.2d 56, 59 (Ind. 2013).

[11] Father specifically contends that the trial court erred when it calculated his child support obligation because the trial court: failed to find that Mother was voluntarily underemployed, incorrectly calculated his credit for health insurance premiums, and failed to give him credit for parenting time. We address each argument in turn.

## *Mother's Employment*

[12] Father contends that the trial court erred when it calculated his child support obligation because it should have found that Mother was underemployed and imputed income to her. Specifically, Father asserts that the trial court's finding that Mother left her full-time employment on the staff of an Indianapolis law firm to work part-time in order to care for her children and stepchildren is clearly erroneous because Mother "never testified that she needed to 'care' for her children." Appellant's Br. at 14. But Mother testified that she left her higher-paying job because she "needed to be closer to home and more available for my three children as well as my two stepchildren who were all living with us at the time." Tr. Vol. II at 15. Thus, there is evidence in the record to support the trial court's finding, and the trial court's finding is not clearly erroneous.

[13] Father also contends that, even if the trial court's finding is supported by the record, the court still erred when it failed to find that Mother was voluntarily underemployed because Mother did not dispute that she is capable of earning a higher income and because Mother "failed to establish that she sought

employment and was unable to secure employment at the rate she was making before voluntarily being underemployed." Appellant's Br. at 14. But our Supreme Court has explained that, "While legitimate reasons may exist for a parent to leave one position and take a lower paying position other than to avoid child support obligations, this is a matter entrusted to the trial court and will be reversed only for an abuse of discretion." *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1015 (Ind. 2004). Here, Mother testified that she left her full-time job at Frost Brown Todd in order to be closer to home and more available for her children and stepchildren. She further testified that, after she left that job in July 2015, she never asked the Court for a modification of her child support obligation. As such, Mother provided a legitimate reason to leave her higher-paying job, and the evidence supports the conclusion that she left that job for reasons other than to avoid her child support obligation. We cannot say that the trial court abused its discretion when it did not find that Mother was voluntarily underemployed.

[14] Next, to the extent that Father contends on appeal that the trial court should have imputed income to Mother based on her fiancé's income, we reject his contention. Indiana Child Support Guideline 3(A)(d) provides that

> regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income. If there were specific living expenses being paid by a parent which are now being regularly and continually paid by that parent's current spouse or a third party, the assumed expenses may be considered imputed income to the parent

receiving the benefit. The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

[15]    While Father made some reference to imputing income to Mother based on her fiancé's income, no cogent argument was made such that it was an abuse of the trial court's discretion to hold otherwise. Therefore, the trial court did not err when it did not find that Mother is voluntarily underemployed and when it did not impute income to her.

*Health Insurance Premiums*

[16]    Father also asserts that the trial court erred when it calculated his credit for paying J.L.'s health insurance premiums. Indiana Child Support Guideline 3(E)(2) provides that "[t]he weekly cost of health insurance premiums for the child(ren) should be added to the basic obligation whenever either parent actually incurs the premium expense or a portion of the expense." And the commentary to the guidelines further advises that,

> [i]n determining the amount to be added, only the amount of the insurance cost attributable to the child(ren) subject of the child support order shall be included, such as the difference between the cost of insuring a single party versus the cost of family coverage. In circumstances where coverage is applicable to persons other than the child(ren) subject of the child support order, such as other child(ren) and/or a subsequent spouse, the total cost of the insurance premium shall be prorated by the number of persons covered to determine a per person cost.

Ind. Child Support Guideline 3(E)(2) cmt.

[17] Father specifically contends that the trial court erred when it deducted the cost of the employee plus spouse plan from the cost of the family plan. Instead, Father asserts that the trial court should have deducted the cost of the individual plan from the cost of the family plan because he would be "entitled to claim the full difference between a family plan and a single employee plan as a health insurance credit for J.L." if he did not cover his wife, stepson, or emancipated children. Appellant's Br. at 17. He also contends that "including the emancipated children of the marriage on the pro-rated amount was erroneous." *Id.*

[18] The Indiana Supreme Court has held that, when reviewing a trial court's calculation of a credit for health insurance premiums, "our standard of review is flexible enough to permit the trial judge to fashion child support orders that are tailored to the circumstances of the particular case before them [sic] and consequently reflect their best judgment." *Johnson*, 999 N.E.2d at 60. And even though there may be more than one way to calculate a credit for health insurance premiums that has merit, based on our flexible standard of review, we will uphold the trial court's calculation if "the trial court fashioned a solution that it believed was equitable to the parties and we are not left with a firm conviction that a mistake was made in doing so." *Id.*

[19] Here, while Father's calculation has some merit, so does the trial court's calculation. The trial court calculated a child support order tailored to the

circumstances of this particular case, which includes the fact that Father does not pay a health insurance premium as a single person. And the trial court's finding is supported by the record. Father acknowledged that he insures not only J.L, but also his wife, his two emancipated daughters, and his stepson. Thus, the trial court fashioned an equitable solution when it deducted the cost of the employee plus spouse plan from the cost of the family plan and when it included the emancipated children in the prorated costs. And we are not left with a firm conviction that a mistake was made. We therefore affirm the trial court's order with respect to the credit Father received for his health insurance premium costs.

## *Parenting Time*

[20] Father next contends that the trial court erred when it failed to credit him with any parenting time for overnight visits. Indiana Child Support Guideline 6 provides that "[a] credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden on the custodial and noncustodial parents in caring for the children. *Young v. Young*, 891 N.E.2d 1045, 1048 (Ind. 2008).

[21] We first note that Father does not dispute the trial court's finding that he has not exercised parenting time with J.L. since Christmas of 2015. Instead, Father asserts that "the effect of the trial court's ruling will be to deny him a parenting time credit" if he exercises his parenting time again. Appellant's Br. at 18. But

we cannot agree. While a "petitioner seeking modification of a child support order must still meet either the 'substantial and continuing' change test or the twenty percent change test to be successful[,]" "the petitioner may apply the parenting time credit to attempt to fulfill either test." *Naville v. Naville*, 818 N.E.2d 552, 556 (Ind. Ct. App. 2004). We therefore agree with the State that, if Father exercises his parenting time with J.L. in the future, he can use the parenting time credit to attempt to prove a substantial and continuing change or a twenty percent change in his child support obligation. *See id*.

[22] Further, Father testified that the last time he requested an overnight visit with J.L. was "during a Christmas break in 2015." Tr. Vol. II at 14. Thus, the evidence supports the trial court's finding that Father has not exercised parenting time, and the finding supports the judgment. The trial court did not err when it did not credit Father with any overnight visits.[2]

[23] In sum, the trial court did not err when it did not find that Mother was underemployed, when it calculated Father's credit for health insurance premiums, and when it did not credit Father with any overnight visits. As such, we affirm the trial court's order with respect to the calculation of Father's child support obligation.

---

[2] Father also asserts that the trial court was without jurisdiction to modify his parenting time because "there was no pending modification of his parenting time with the parties' youngest child[.]" Appellant's Br. at 17. But, in its order, the trial court did not modify Father's parenting time. It simply removed the credit Father would have received towards his child support obligation had he exercised his parenting time.

### *Issue Two: Agreed Entry*

[24]     Father next asserts that the trial court erred when it interpreted the Agreed Entry, which modified the parties' original settlement agreement. "[M]arital settlement agreements are contracts, and we review questions of contract interpretation *de novo*." *Schwartz v. Heeter*, 994 N.E.2d 1102, 1105 (Ind. 2013) (internal citation omitted). Father specifically contends that the trial court erred when it found that the language of the Agreed Entry was unambiguous and that the modification of his child support obligation was retroactive to the date of his motion to modify child support instead of the date of M.L.'s nineteenth birthday, as provided in the Agreed Entry.

[25]     Father concedes that "generally, a trial court is without the ability to modify a child support obligation retroactive to a date prior to the filing of a petition for modification." Appellant's Br. at 22. But he asserts that paragraph three of the Agreed Entry, which stated that M.L. will be emancipated by operation of law on February 12, 2016, "relieved him of the obligation to file for a modification" because that paragraph "specifically provided for an automatic modification[.]" Appellant's Br. at 20.

[26]     However, the commentary to the Indiana Child Support Guidelines provides:

> In child support orders issued under these Guidelines, support amounts for two or more children, are stated as an in gross or

total amount rather than on a per child basis.[3]  *Absent judicial modification of the order*, the total obligation will not decrease when the oldest child reaches nineteen (19) years of age, or the child is emancipated after other events.  *Parents should seek to modify child support orders when the legal obligation to pay child support terminates for any child or any child is emancipated*.

Child Supp. G. 4 cmt. (emphasis added).  Further, "when a court enters an order in gross, that obligation similarly continues until the order is modified and/or set aside, or *all* the children are emancipated, or *all* the children reach the age of twenty-one."  *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007).

[27]  We agree with Father that the Agreed Entry provided that M.L. would be emancipated as a matter of law on February 12, 2016.  But, absent judicial modification, Father's total obligation did not decrease on that date.  Father was still required to seek judicial modification of the child support order when his legal obligation to pay terminated upon M.L.'s emancipation.  *See Child Supp. G. 4 cmt.*

[28]  Father also contends that the Agreed Entry was a "self-adjusting modification" that was modified on February 12, 2016.  Appellant's Br. at 23.  But we cannot agree.  Even though the Agreed Entry provided a date on which M.L. was to be emancipated, it did not provide any information regarding the new amount Father would be required to pay in order to support J.L.  As such, we agree

---

[3] The parties do not dispute that the amount Father was required to pay in child support pursuant to the Agreed Entry was an in gross amount for both M.L. and J.L.

with the trial court that the Agreed Entry required Father "to pay his monthly child support obligation *until further modification*." Appellant's App. Vol. III at 28 (emphasis in original).

[29] And Father did not seek judicial modification of the child support order until May 24, 2017. It is well-settled that "the trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify was filed or any date thereafter chosen by the trial court." *Laux v. Ferry*, 34 N.E.3d 690, 695 (Ind. Ct. App. 2015) (quoting *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 763 (Ind. Ct. App. 2013)). And, here, the trial court made the modification of the child support order relate back to the date Father filed his motion to modify. As such, the trial court did not err when it interpreted the parties' Agreed Entry and made the modification for child support retroactive only to the date of Father's motion for modification.

[30] In conclusion, the trial court did not err when it calculated Father's current child support obligation or when it made the modification of child support retroactive to the date Father filed is motion for modification. We therefore affirm the trial court's order.

[31] Affirmed.

Robb, J., and Altice, J., concur.