

IN THE

# Court of Appeals of Indiana

Jason Stanke,

*Appellant-Respondent*

v.

Nichole Schmitt,

*Appellee-Petitioner*



FILED

Nov 13 2025, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

November 13, 2025

Court of Appeals Case No.
25A-DC-555

Appeal from the Hendricks Superior Court

The Honorable Kathryn M. Kuehn, Judge

Trial Court Cause No.
32D01-2010-DC-593

**Opinion by Judge Kenworthy**
Judges Bailey and Tavitas concur.

**Kenworthy, Judge.**

## Case Summary

[1] Jason Stanke ("Father") appeals the trial court's order modifying his child support obligation for the two children he shares with his ex-spouse Nichole Schmitt ("Mother"). Father presents two issues for our review, which we expand and restate as the following three:

1. Did the trial court clearly err by excluding from Mother's income the child support she receives for a prior-born child?

2. Did the trial court clearly err by not including in-kind contributions from Mother's spouse when calculating her income?

3. Did the trial court clearly err by deviating from the parties' stipulation as to Father's income?

[2] We discern no error in the trial court's calculation of Mother's weekly gross income, but the trial court erred when it deviated from the parties' stipulation and recalculated Father's income. Accordingly, we affirm in part, reverse in part, and remand for recalculation of the parties' child support obligations.

## Facts and Procedural History

[3] Father and Mother's marriage was dissolved in 2013. They share joint legal and physical custody of their two teenaged children ("Children") and observe a 2-2-5-5 parenting time schedule. In 2021, the trial court entered an agreed child

support modification order obligating Father to pay $250 per week for support of Children.

[4] In May 2024, Father moved to modify his child support obligation. The trial court held a hearing on the motion in January 2025 at which Father and Mother testified. At the outset, the parties stipulated Father's weekly gross income is $3,173 and his weekly child support obligation for his prior born child(ren) is $281.[1] The parties also stipulated Mother has one subsequent born child, the parties have no daycare costs for Children, the overnight credits were 182 for each parent, and Mother's husband of ten years ("Stepfather") covered Children under his medical, dental, and vision insurance plans.[2] That left Mother's income for the child support calculation as the "singular issue" in dispute. *Tr. Vol. 2* at 5.

[5] Mother lives with Stepfather and their eight-year-old daughter. Mother also has primary physical custody of an older son from a prior marriage and receives $65 per week in child support for him. As to their household income, Stepfather earns approximately $160,000 annually. Mother had been a "stay-at-home mom" for fifteen years, beginning when she and Father were married and Children were born. *Id.* at 44. But in February 2024, Mother started working

---

[1] The trial court's order refers to Father's prior born children, but Father testified he pays support for one older child. The exact number is immaterial to the resolution of this appeal.

[2] The parties agreed not to include any health insurance premiums in their calculations, unless the trial court imputed Stepfather's income to Mother as an in-kind benefit, in which case Mother reserved the right to request credit for Stepfather's premium payments.

part-time for $18.50 per hour as an office assistant and events coordinator for the Plainfield Chamber of Commerce. Mother testified her average weekly gross income was $518, reflecting a twenty-eight-hour work week. Mother stated her current employer does not offer her full-time hours, but otherwise nothing prevented her from working forty hours per week. She would not incur daycare expenses for her younger daughter if she worked more. She has some college education.

[6] The parties also testified about their household expenses and lifestyles. Each parent lives in an approximately 4,000-square-foot house in Plainfield. Both families have means to travel and make home improvements. For example, Father installed a pool at his home; Mother put in a koi pond and hot tub at hers. In recent years, Father spent $30,000 taking his family on a European vacation. Mother and her family went on an Alaskan cruise that cost $16,000.

[7] Mother introduced a financial declaration prepared in July 2024 showing total monthly household expenses of $7,078.49.[3] Mother testified her home was in Stepfather's name and the mortgage payment was $2,448.67. As to her paycheck and Stepfather's income, she testified: "All of our funds go into bank accounts that we both have access to." *Id.* at 63. Stepfather also provided health insurance for himself, Mother, and all four children in their household,

---

[3] The financial declaration contains both specific numbers—such as $299.43 for electricity—and what appear to be general estimates—such as $1,000 for food/household supplies/laundry/cleaning. *Ex. Vol. 3* at 4. It does not indicate a percentage paid by Mother versus Stepfather or assign a value of benefit received per household member.

for a bi-weekly cost of $375.50. Mother acknowledged she relied on Stepfather for her lifestyle.

[8] Father stated he works as an IT consultant making $165,000 per year. His wife ("Stepmother") is a realtor, earning up to $100,000 annually, although her income varies and in some years was lower. Father said Stepmother's income is used to pay their household expenses "[t]o some degree," and Stepmother owns their house outright. *Id*. at 36. Mother's counsel also elicited testimony that Father earns an annual bonus of $15,000 to $20,000 and the stipulated weekly gross income was calculated on his base salary, excluding bonuses.

[9] Father requested the trial court impute a total of $3,173 in income to Mother—the same as Father's stipulated weekly gross income. His rationale was that Mother received in-kind benefits from Stepfather which allow her to live a lifestyle beyond what an income of $518 per week would permit. He believed this would be fair because "where I'm at financially, I'm able to afford to do these activities based on my income. So, somebody else who does a very similar type of activity, enjoys a very similar type of lifestyle, it would be assumed that they would have to have the same amount of income." *Id.* at 25. He asked the trial court to "essentially zero out any child support." *Id*. at 26.

[10] For her part, Mother asked the trial court to use the stipulated weekly gross income of $3,173 for Father, Mother's actual weekly gross income of $518, and exclude their spouses' earnings and Stepfather's contributions to health insurance expenses from the child support calculation.

[11]     At the end of the hearing, the trial court took the matter under advisement and asked the parties to prepare proposed findings and conclusions.[4] In an order issued a few weeks later, the trial court found, in relevant part:

> 5. The children enjoy similar lifestyles in both parties' homes.

> 6. The parties' overall household incomes are comparable.

> * * *

> 10. . . . [Stepfather] provides for [Mother's] housing expense, utilities, vehicle and insurance, cell phone, and food.

> * * *

> 14. Both [Mother] and [Father] testified their current spouses contribute to the monthly expenses in their respective homes. However, there was no testimony or evidence as to what exact amount or even a percentage the spouses contribute.

> IT IS HEREBY ORDERED:

> 15. The Court having considered the financial resources of both [Mother] and [Father], including the income of their current spouses, now orders child support without including such in-kind financial contributions. [Father] is requesting Mother's income be increased to the same as his own income ($3,173) due to her current [spouse's] annual wages. However, despite testifying that his own current spouse's income is used to pay household

---

[4] The proposed orders do not appear in the appendix on appeal.

expenses, [Father] does not want that income to be included. [Father] wants the Court to impute in-kind income only to [Mother] because her remarriage can provide the children with a lifestyle similar to what he is able to provide. The Court will not order a calculation of child support that imputes in-kind financial resources for only one party and not the other.

16. The Court finds [Mother] is voluntarily underemployed and imputes additional income to her as if she were working full-time. . . . The court hereby imputes additional income of [$222] to [Mother's] weekly income due to her voluntary underemployment.

17. The Court will include [Father's] annual bonus into the child support calculation. . . . Although some bonuses can be irregular or not guaranteed, such is not the case here. . . .

18. [Father's] child support obligation will now be $344.00 per week.

*Appellant's App. Vol. 2* at 31–34.

## Standard of Review

Father appeals the calculation of his child support obligation. "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). "We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law." *Id*. In this case, the trial court entered specific findings of fact and conclusions thereon to support its judgment. We will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial

court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In other words, we will not reweigh the evidence or judge the credibility of the witness for ourselves and we will view the evidence most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Where, as here, the trial court enters findings *sua sponte*, we review issues covered by the findings by determining first whether the evidence supports the findings and, if so, whether the findings support the judgment. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). Factual findings are clearly erroneous if the record contains no facts or inferences supporting them. *Johnson v. Johnson*, 999 N.E.2d 56, 59 (Ind. 2013). A judgment is clearly erroneous when it relies on an improper legal standard. *Id*. We apply a general judgment standard to issues on which the trial court made no findings. *Steele-Giri*, 51 N.E.3d at 123–24; *see also* T.R. 52(D). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Miller v. Lucas*, 264 N.E.3d 651, 655 (Ind. Ct. App. 2025) (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)).

## 1. The trial court did not err in excluding from Mother's income the child support she receives for a prior-born child.

[13] In any proceeding for the award of child support, there is a rebuttable presumption that the amount of the award resulting from the application of the Indiana Child Support Guidelines ("the Guidelines") is the correct amount of support to be awarded. Ind. Child Support Rule 2 (1989). The Guidelines "provide both structure and flexibility for trial courts to set and modify child

support obligations in ways tailored to the circumstances of the parties before them." *Johnson*, 999 N.E.2d at 57. Under the Guidelines, trial courts must follow certain processes and consider certain factors, "but there remains a degree of latitude within which a court may fashion an order that best meets the needs of the child and also reflects the financial realities of the parents." *Id*.

[14] Under the Guidelines, each parent's weekly gross income is the starting point for determining the child support obligation. Weekly gross income is defined as "actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and the value of in-kind benefits received by the parent." Ind. Child Support Guideline 3(A)(1) (2024). With some exceptions not relevant here,[5] a parent's income broadly includes income from "any source," including, but not limited to, "income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, structured settlements, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, prizes, and alimony or maintenance received." *Id*. The Child Support Obligation Worksheet used by our trial courts does not include space to calculate weekly

---

[5] Weekly gross income excludes income from "means-tested public assistance programs" or "survivor benefits received by or for other children residing in either parent's homes." Child Supp. G. 3(A)(1). Social security disability benefits paid for the child's benefit are included in a disabled parent's gross income, but the parent is entitled to a credit for those amounts paid for the child's benefit. *Id*.

gross income; that calculation is done separately and then entered on the worksheet.

[15] Father first argues the trial court erred when it failed to include in Mother's weekly gross income the $65 per week Mother receives in child support for her prior-born son. Other than the Guidelines' reference to income from "any source," *id.*, Father cites no authority for this proposition. Mother responds that "child support is paid for the benefit of the child, not the parent," and therefore should be excluded from her income calculation. *Appellee's Br.* at 12 (citing generally to Indiana Code Section 31-16-6-1 (relevant factors considered by court ordering child support)).

[16] The Guidelines' extensive list of income sources is silent as to whether a parent's weekly gross income includes the child support payments the parent receives for a prior-born child. And the exclusions from income do not mention such payments. But Indiana courts have long held "the right to child support lies exclusively with the child" and "a custodial parent holds the support payments in trust for the child's benefit." *Sickels v. State*, 982 N.E.2d 1010, 1013 (Ind. 2013). "An order for child support, established as part of a dissolution action, is intended to provide for the support and maintenance of the parties' minor children." *Beehler v. Beehler*, 693 N.E.2d 638, 640 (Ind. Ct. App. 1998). "Child support awards are designed to provide the children as closely as possible with the same standard of living they would have enjoyed had the marriage not been dissolved." *Bussert v. Bussert*, 677 N.E.2d 68, 70 (Ind. Ct. App. 1997), *trans. denied*.

[17] In addition, the Guidelines generally permit a parent *making* child support payments to reduce their weekly gross income dollar-for-dollar for payments to support a prior-born child (whether by court order or arising from a legal duty). And parents receive a proportional income reduction for each subsequently born child. For example, in this case, Father's weekly gross income was reduced by $281 to account for his child support payments for his prior-born child, and Mother's income was reduced by $48.10 per week for her subsequent daughter with Stepfather.

[18] Considering the general purpose of child support and the Guidelines' treatment of child support in other contexts, we conclude it would frustrate the purpose of child support payments to include in Mother's weekly gross income the child support she receives for her prior-born son. Those resources are to benefit her prior-born son and should not be factored into the calculation of support for her children with Father. Accordingly, the trial court did not err in excluding the child support Mother receives for the benefit of her prior-born son from her weekly gross income.

## 2. The trial court did not clearly err by declining to impute to Mother the value of in-kind benefits received.

[19] Father next argues the trial court erred by declining to impute income to Mother based on the value of in-kind benefits received from Stepfather.

[20] Generally, the "income of the spouses of the parties is not included in Weekly Gross Income." Child Supp. G. 3(A) Cmt. § 2. But as discussed above, the

Guidelines define weekly gross income to include a parent's "potential income if unemployed or underemployed" and "the value of in-kind benefits received by the parent." Child Supp. G. 3(A)(1). Both types of income may come into play when a parent remarries, and the new relationship affects the parent's employment or reduces the parent's living expenses. *See* Child Supp. G. 3(A) Cmt. § 2(d) (explaining the "marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or the value of in-kind benefits or both should be considered in arriving at gross income").

[21] If a court finds a parent is voluntarily unemployed or underemployed without just cause, "child support shall be calculated based on a determination of potential income." Child Supp. G. 3(A)(3). Potential income is based on "employment potential and probable earnings level" considering myriad factors, including "earnings history, occupational qualifications, educational attainment, literacy, age, health, criminal record or other employment barriers, prevailing job opportunities, and earnings levels in the community." Child Supp. G. 3(A)(3). Among others, one purpose of including a parent's potential income "is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3(A) Cmt. § 2(c). "Obviously, a great deal of discretion will have to be used in this determination." *Id*.

[22] In addition to actual and potential income, "in-kind payments received by a parent in the course of employment, self-employment, or operation of a

business should be counted as income if they are significant and reduce personal living expenses" and might include, for example, "a company car, free housing, or reimbursed meals." Child Supp. G. 3(A)(2). Such imputed income "may be substituted for, or added to, other income in arriving at Weekly Gross Income." Child Supp. G. 3(A) Cmt. § 2. The commentary clarifies that imputing the value of in-kind benefits is not limited to times when a parent receives benefits from an employment or business situation:

> [R]egular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for housing, utilities, or groceries, may be included as gross income. If there were specific living expenses being paid by a parent which are now being regularly and continually paid by that parent's current spouse or a third party, the value of those assumed expenses may be considered to be in-kind benefits and included as part of the parent's weekly gross income.

Child Supp. G. 3(A) Cmt. § 2(d). Like potential income, whether "the value of in-kind benefits should be included in a parent's weekly gross income is fact-sensitive and requires careful consideration of the evidence in each case." *Id*.

[23] As to the value of in-kind benefits, the trial court found Stepfather provides for Mother's "housing expense, utilities, vehicle and insurance, cell phone, and food." *Appellant's App. Vol. 2* at 32. The trial court also found both parents' current spouses contributed to their respective households. But the trial court declined to impute the value of in-kind benefits received by either parent, in part because there was "no testimony or evidence as to what exact amount or even a percentage the spouses contribute." *Id.* at 33.

[24] At the hearing, Mother testified her home was in Stepfather's name and the mortgage payment was $2,448.67. She acknowledged she relied on Stepfather for her lifestyle and introduced a financial declaration prepared in July 2024 showing total monthly household expenses of $7,078.49. But Father elicited, and Mother provided, no testimony about the "specific living expenses" Stepfather alone was "regularly and continually" paying. When asked who paid for her cell phone, Mother responded: "My husband." *Tr. Vol. 2* at 62. But Mother then clarified: "All of our funds go into bank accounts that we both have access to. So, as far as . . . allocating who pays for exactly which things, I'm not sure." *Id.* at 63. And on cross-examination, Father agreed with Mother's counsel that he "actually [does] not have a specific number for an in-kind benefit that [Mother] receives." *Id.* at 38.

[25] It was "Father's burden to present evidence regarding the value of Mother's living expenses, if any, that were paid for by her [spouse] for purposes of establishing imputed income[.]" *In re Paternity of C.B.*, 112 N.E.3d 746, 761 (Ind. Ct. App. 2018), *trans. denied*. But rather than identifying "regular and continuing payments made by" Stepfather that reduce Mother's "costs for housing, utilities, or groceries," Child Supp. G. 3(A) Cmt. § 2(d), Father asked the trial court to impute the value of *Father's* income to Mother. This is not what the Guidelines contemplate.

[26] Still, Father argues on appeal the trial court should at minimum impute the whole of Mother's mortgage payment—$2,442.67—to her weekly gross income because the "mortgage is solely paid for by her husband each month and has

been for over ten years." *Appellant's Br.* at 13; *see also Appellant's Reply Br.* at 6 (Father arguing in reply that "all parties agreed that step-father was paying the monthly mortgage"). Father relies on *Glass v. Oeder*, in which our Supreme Court held a father's rent-free living arrangement was a proper basis for the trial court to impute $1,500 per month of in-kind benefit to his gross income. 716 N.E.2d 413, 417 (Ind. 1999) (imputing the presumed monthly rental value of the home). But even though Mother's mortgage was in Stepfather's name and he had paid it in prior years, Mother was earning actual income and contributing financially to her household expenses at the time of the hearing. Mother testified they commingled their incomes. There was no basis for the trial court to impute the entire mortgage payment as income to Mother, nor did Father specifically ask the trial court to impute it at the hearing.

[27] Moreover, imputation of the value of in-kind benefits is not mandatory. *See Laux v. Ferry*, 34 N.E.3d 690, 693 (Ind. Ct. App. 2015) ("While there is ample authority standing for the proposition that a trial court *may* impute [expenses paid by] a parent's spouse, we have found none—and Father directs us to none—that *requires* it.") (citing prior version of the Guidelines); *see also* Child Supp. G. 3(A) Cmt. § 2 (providing that "imputed income *may* be substituted for, or added to, other income in arriving at Weekly Gross Income") (emphasis added). And the Guidelines contemplate a flexible approach wherein trial courts exercise discretion, providing a parent's remarriage "may give rise to a situation where *either potential income or the value of in-kind benefits or both* should

be considered in arriving at gross income." Child Supp. G. 3(A) Cmt. § 2(d) (emphasis added).

[28] In this case, the trial court considered the parties' unique circumstances, balancing several factors to determine Mother's weekly gross income. First, the trial court rejected Father's position that income from Mother's spouse should be considered, but income from Father's spouse should not. And although the trial court chose not to impute the value of in-kind benefits to Mother, it found she was voluntarily underemployed. Based on Mother's testimony about her earnings history, occupational qualifications, education, and childcare needs, the trial court calculated her weekly potential income as her current hourly wage at forty hours per week: $740 or $3,200 per month.[6] Having already attributed potential income to Mother, and in the absence of testimony about regular and continuing payments Stepfather makes, we cannot say the trial court clearly erred in declining to impute to Mother the value of in-kind benefits.

### 3. The trial court erred by deviating from the parties' stipulation to Father's weekly gross income.

[29] Father next argues the trial court erred by calculating his weekly gross income as $3,461 instead of the $3,173 to which the parties stipulated. The larger number reflects the trial court's inclusion of a $15,000 annual bonus Father

---

[6] We arrive at this number by multiplying $740 by fifty-two (weeks per year) and dividing by twelve (months per year).

receives, spread over fifty-two weeks per year. Father does not challenge the finding that he receives a bonus of that amount or that it was not included in the parties' stipulation. Nor does he challenge the payment schedule the trial court imposed. Instead, he contends the stipulation was binding on the trial court.

[30] A stipulation establishes a particular matter as a fact. *Ehle v. Ehle*, 737 N.E.2d 429, 433 (Ind. Ct. App. 2000). A stipulation of fact is an express waiver by the parties and their counsel of the intended issues. *Id.* Put differently, "a stipulation is a confessory pleading negating the need to offer evidence to prove the fact, and the party is not permitted to later attempt to disprove the fact." *Ind. Dep't of Env't Mgmt. v. Adapto, Inc.*, 717 N.E.2d 646, 650–51 (Ind. Ct. App. 1999). "Once a stipulation is entered into between the parties, the facts so stipulated are conclusive upon both the parties and the tribunal." *Coonan v. State*, 382 N.E.2d 157, 162 (Ind. 1978). "Generally, stipulations may not be withdrawn absent grounds such as fraud, mistake, undue influence, or grounds of a similar nature." *B-Dry Owners Ass'n v. B-Dry Sys., Inc.*, 636 N.E.2d 161, 165 (Ind. Ct. App. 1994), *trans. denied*.

[31] At the outset of the hearing, the parties jointly stipulated Father's weekly gross income was $3,173. In so stipulating, Mother expressly waived the issue of Father's income, and she was not permitted to later disprove that fact. On appeal, Mother makes no argument the stipulation was induced by fraud, mistake, or undue influence. Accordingly, the trial court clearly erred in adjusting Father's weekly gross income to an amount different than the parties'

stipulation, and we reverse and remand to recalculate the parties' respective child support obligations using Father's weekly gross income as stipulated. *See id.* at 166 (holding the trial court erred in deviating from the parties' stipulated sales figures when calculating damages and remanding for recalculation).

## Conclusion

[32] The trial court did not clearly err in calculating Mother's weekly gross income. But the trial court erred in deviating from the parties' stipulation as to Father's income, and accordingly we reverse and remand for recalculation consistent with this decision.

[33] Affirmed in part, reversed in part, and remanded.

Bailey, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Rachelle N. Ponist
Harshman Ponist Smith & Rayl
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Zachariah M. Phillips
Sarah Schnautz
Bernhardt Phillips, LLP
Indianapolis, Indiana